106 F.3d 11
 Fed. Sec. L. Rep. P 99,378, 36 Fed.R.Serv.3d 1458
 ADVANCED MAGNETICS, INC., Plaintiff-Appellant,
v.
BAYFRONT PARTNERS, INC., William Wood, Jr., and Interbay
Group, Defendants-Appellees,
Donna Wood, Defendant,
Aim Securities, Inc. and Painewebber Incorporated,
Third-Party Defendants.
 No. 368, Docket 96-7328.
 United States Court of Appeals,
Second Circuit.
 Jan. 13, 1997.
 
 Martin E. Karlinsky, New York City (Ronald D. Lefton, Michael A. Levy, Allison J. Unger, Adam S. Ziffer, Camhy Karlinsky & Stein, New York City, on the brief), for Plaintiff-Appellant.
 Harry L. Garman, Fairfield, New Jersey (Edward I. Sussman, New York City, on the brief), for Defendants-Appellees.
 Before KEARSE, WALKER, and JACOBS, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Advanced Magnetics, Inc. ("AMI"), appeals from so much of a judgment of the United States District Court for the Southern District of New York, Charles S. Haight, Jr., Judge, entered pursuant to Fed.R.Civ.P. 54(b), as dismissed those parts of its complaint against defendants Bayfront Partners, Inc., Interbay Group ("Interbay"), and William Wood, Jr., which purported to assert (1) claims on behalf of AMI as an assignee of certain of its shareholders, and (2) claims under § 10(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(a) (1994), and Rule 10a-1, 17 C.F.R. § 240.10a-1 (1996), promulgated thereunder. The district court ruled that AMI lacked standing to sue as assignee because the alleged assignment agreements were not sufficient for that purpose. Pursuant to Fed.R.Civ.P. 12(b)(6), the court also dismissed all claims asserted under § 10(a) and Rule 10a-1 on the ground that no private right of action exists under those provisions. On appeal, AMI contends that those rulings were erroneous. It also contends that if the assignments were ineffective, the court should have granted leave to amend the complaint to bring in the purported assignors as plaintiffs in their own names. Though we uphold the district court's ruling that the assignments were not sufficient to give AMI standing to pursue the shareholders' claims, we conclude that the court should not have dismissed those claims but should have granted AMI's request to amend the complaint to allow the shareholders to pursue their own claims. Accordingly, we vacate so much of the judgment as dismissed those claims and remand for further proceedings. As to the district court's dismissal of the claims under § 10(a) and Rule 10a-1, we conclude that the Rule 54(b) certification was improvidently granted, and we therefore dismiss for lack of appellate jurisdiction so much of AMI's appeal as challenges that ruling.
 
 I. BACKGROUND
 
 2
 The events giving rise to this litigation, as alleged in the complaint, were as follows.
 
 A. The Events
 
 3
 AMI's shares are listed and traded on the American Stock Exchange ("AMEX"). In late 1991, AMI filed a registration statement with the Securities and Exchange Commission ("SEC") in order to effectuate a secondary public offering of its stock, in which it and five of its shareholders, Jerome Goldstein, Marlene Kaplan Goldstein, Leslie Goldstein, Lee Josephson, and ML Technology Ventures, L.P. (collectively the "selling shareholders"), were to offer for sale a total of 1,750,000 shares. Approximately 60 percent of these shares belonged to AMI; the remainder belonged to the selling shareholders. The offering was to take place on February 5, 1992. According to AMI's agreement with its underwriter, the per-share price in the offering was to be $1 below the final bid price of AMI stock at the close of trading on February 4, 1992.
 
 
 4
 On February 4, minutes before the close of trading, Wood caused Interbay to place an order to sell 7,000 shares of AMI stock at a price that was $.375 per share lower than the then-last reported trade; the sale was to be effected at the close of trading. Because AMI's stock was thinly traded, that sale of 7,000 shares (the "Interbay sale") accounted for 63% of the trading in AMI's stock on that day and caused the closing price of AMI's stock to decline by $.50 a share. Because the offering price of AMI stock in the public offering was linked to the February 4 closing price, the offering price was $.50 per share below what it would have been had there been no Interbay sale.
 
 
 5
 The Interbay sale was a "short sale," i.e., a sale of stock that defendants did not own on February 4. Defendants "covered" their short sale on February 5 by purchasing 5,000 AMI shares in the public offering; they purchased the remaining 2,000 shares on February 5 on the open market.
 
 
 6
 AMI commenced the present action in September 1992, partially in its own right and partially as assignee of the selling shareholders, alleging that the Interbay short sale violated § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b) (1994), and SEC Rules 10b-5 and 10b-21, 17 C.F.R. §§ 240.10b-5, 240.10b-21 (1996) (denominated the "FIRST CAUSE OF ACTION"), as well as § 10(a) and Rule 10a-1 (denominated the "SECOND CAUSE OF ACTION"). Both causes of action alleged that AMI had suffered a loss of at least $875,000, representing the 1,750,000 shares sold by AMI and the selling shareholders in the public offering, multiplied by the $.50 per share by which the offering price was alleged to have been lowered as a result of defendants' conduct.
 
 
 7
 B. The Assignments and the Rulings of the District Court
 
 
 8
 In asserting its right to pursue claims belonging to the selling shareholders, AMI relied principally on written agreements by which it maintained that the shareholders had assigned their claims to AMI. Its agreements with the individual selling shareholders stated, in pertinent part, that
 
 
 9
 the assignors do hereby assign to AMI the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings at law or in equity in any court of competent jurisdiction which arise from the above-[described] claims.
 
 
 10
 AMI's agreement with ML Technology Ventures, L.P. ("MLTV"), contained an identical provision, but the MLTV agreement was made subject to a separate letter agreement ("AMI-MLTV letter agreement") stating, inter alia, that, subject to MLTV's right to terminate the arrangement at any time, AMI would pursue the lawsuit "on behalf of" MLTV without naming MLTV as a plaintiff, and that MLTV would pay its pro rata share of the litigation costs and receive its pro rata share of the recovery.
 
 
 11
 In December 1993, following a period of discovery, AMI moved to amend the complaint to make the selling shareholders the named plaintiffs on their own claims. AMI stated that its motion was prompted by defendants' pretrial discovery focus on the validity of the assignments to AMI. In a Memorandum Opinion and Order dated July 6, 1994, 1994 WL 324018 ("1994 Opinion"), the district court denied AMI's motion on two grounds. First, it ruled that the amendment would be "futile" because AMI did not concede that the assignments either were not made or were not valid. 1994 Opinion at 3. Second, the court ruled that the selling shareholders' claims would be barred by the statute of limitations on the ground that the amendment did not "relate back" to the date of the original complaint, id., because the assertion by AMI of the selling shareholders' claims in the original complaint was "tactical," rather than due to a "mistake" within the meaning of Fed.R.Civ.P. 15(c), 1994 Opinion at 8.
 
 
 12
 Following the denial of AMI's motion to amend the complaint, defendants moved to dismiss, inter alia, the claims asserted by AMI as assignee on the ground that the purported assignments were ineffective to transfer ownership of the claims to AMI and hence AMI lacked standing to assert those claims. They also moved to dismiss the claims asserted by AMI, in any capacity, under § 10(a) and Rule 10a-1 on the ground that there is no private right of action for violation of those provisions. In opposition to the motion to dismiss the allegedly assigned claims, AMI presented, inter alia, deposition testimony by the individual selling shareholders to the effect that they had intended to make irrevocable assignments of their interests in the proceeds of their claims although they neither received nor expected to receive any value in return.
 
 
 13
 In a Memorandum Opinion and Order dated January 10, 1996 ("1996 Opinion"), the district court granted defendants' motion. With respect to the assignment issue, the court noted the "generally accepted principle that in order to be effective, an assignment to transfer a chose in action must manifest an intent to divest the assignor of all control and right to his claim, thereby empowering the assignee to control the cause of action and to receive its fruits." 1996 Opinion at 6 (emphasis in original). After reviewing the evidence presented by each side, the court concluded that there was no evidence that AMI had been given ownership of, or the right to retain any recovery with respect to, the claims of the selling shareholders. The court found that the AMI-MLTV letter agreement showed conclusively that the parties intended MLTV to retain the right to its pro rata share of the litigation proceeds. Id. at 7-8. The court noted that the other assignment agreements were "entirely silent about what happens to any litigation proceeds," id. at 8, and hence insufficient in themselves to convey ownership of any recovery to AMI, and the court found the deposition testimony that the individual selling shareholders had intended to cede their claims (worth a total of $62,500, according to the complaint) without receiving or expecting value in return was "unworthy of belief," id. at 9. The court concluded that AMI therefore could not show that the assignments in question were effective to transfer ownership to AMI, and hence AMI had no right to sue on the selling shareholders' claims. Id.
 
 
 14
 The district court denied AMI's renewed request for leave to amend the complaint to add the selling shareholders as plaintiffs in order to permit them, rather than AMI, to pursue their claims. Id. at 9-10. The court adhered to the conclusion stated in its 1994 Opinion that any such amended claims would be barred by the applicable statute of limitations because under Rule 15(c)(3) they would not relate back to the date of the original complaint. 1996 Opinion at 9-10.
 
 
 15
 With respect to the § 10(a) and Rule 10a-1 claims, the district court, citing the generally restrictive approach adopted by the Supreme Court in recent years with respect to whether private rights of action are to be implied, and noting the apparent silence of the legislative history with respect to a private right of action under § 10(a), held that no implied right was available. 1996 Opinion at 10-18.
 
 
 16
 The court instructed that the dismissal of AMI's claims as assignee be included in a final judgment pursuant to Fed.R.Civ.P. 54(b), thereby permitting an immediate appeal. The court stated that although "[u]necessary piecemeal appeals are to be discouraged," 1996 Opinion at 23, Rule 54(b) certification was warranted in order to permit AMI to appeal immediately so that, if there were a reversal, the claims of all sellers in the public offering could be tried at the same time.
 
 
 17
 [E]fficient case management argues in favor of entering judgment dismissing the complaint insofar as it seeks to assert claims on behalf of the purported assignees [sic ]. There is nothing to be said for sending the case to trial on AMI's claim, only to have the court of appeals decide subsequently that the assignees' [sic ] claims should have been tried as well.
 
 
 18
 1996 Opinion at 23.
 
 
 19
 In addition, the court directed that the dismissal of AMI's § 10(a) and Rule 10a-1 claims be included in the final judgment. No rationale for entry of a final judgment as to those claims (or three other claims dismissed in the 1996 Opinion) was stated except the fact that AMI would be able to appeal with respect to the assignment issue. The court stated only that
 
 
 20
 [s]ince there will be an intermediate appeal (if AMI is so advised), I will extend the Rule 54(b) direction to the other issues resolved by this opinion.
 
 
 21
 1996 Opinion at 23.
 
 
 22
 Accordingly, to the extent pertinent to this appeal, judgment was entered (1) dismissing the complaint insofar as it purported to assert claims belonging to Jerome Goldstein, Marlene Kaplan Goldstein, Leslie Goldstein, Lee Josephson, and MLTV, and (2) dismissing the complaint's second cause of action, i.e., the claims asserted under § 10(a) and Rule 10a-1.
 
 II. DISCUSSION
 
 23
 AMI has appealed from (a) the dismissal of its claims as assignee, and (b) the dismissal of its claims under § 10(a) and Rule 10a-1. For the reasons that follow, we conclude that although the district court properly ruled that AMI lacks standing to pursue the claims of the selling shareholders, the court should have permitted amendment of the complaint to name each of the selling shareholders as the plaintiff on his, her, or its own respective claims. As to the appeal from dismissal of the claims under § 10(a) and Rule 10a-1, we conclude that we lack appellate jurisdiction.
 
 
 24
 A. The Claims of AMI as Assignee of the Selling Shareholders
 
 
 25
 Before discussing the merits of the dismissal of the claims asserted by AMI as assignee of the selling shareholders, we address briefly our jurisdiction to entertain that part of the appeal.
 
 1. Appealability
 Rule 54(b) provides in pertinent part that
 
 26
 [w]hen more than one claim for relief is presented in an action ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties ... upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.
 
 
 27
 Fed.R.Civ.P. 54(b). Thus, to permit entry of a final, immediately appealable Rule 54(b) judgment, there must be
 
 
 28
 (1) multiple claims or multiple parties ..., (2) at least one claim, or the rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make "an express determination that there is no just reason for delay" and expressly direct the clerk to enter judgment.
 
 
 29
 Ginett v. Computer Task Group, Inc., 962 F.2d 1085, 1091 (2d Cir.1992) (emphasis in original).
 
 
 30
 Generally, a district court may properly make a finding that there is "no just reason for delay" only when "there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal," Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir.) (internal quotation marks omitted), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), for example, where a plaintiff might be prejudiced by a delay in recovering a monetary award, see, e.g., Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 11-12, 100 S.Ct. 1460, 1466-67, 64 L.Ed.2d 1 (1980); Ginett v. Computer Task Group, Inc., 962 F.2d at 1097, or "where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with the other claims," Cullen v. Margiotta, 811 F.2d at 711. The district court's explanation as to why a disposition should be appealable immediately is entitled to "substantial deference," Curtiss-Wright Corp. v. General Electric Co., 446 U.S. at 10, 100 S.Ct. at 1466, and we thus review it for abuse of discretion, see, e.g., Ginett v. Computer Task Group, Inc., 962 F.2d at 1092; Cullen v. Margiotta, 811 F.2d at 711. As a general matter, however, we have emphasized that, in light of the "historic federal policy against piecemeal appeals," id. at 710 (quoting Curtiss-Wright Corp. v. General Electric Co., 446 U.S. at 8, 100 S.Ct. at 1465) (internal quotation marks omitted), the court's power under Rule 54(b) to enter a final judgment before an entire case is concluded should be exercised "sparingly," Cullen v. Margiotta, 811 F.2d at 710.
 
 
 31
 The above procedural prerequisites have been met with respect to the district court's dismissal of AMI's claims brought as assignee. Though AMI is a single entity, it sought to bring suit in two capacities, pursuing two distinct sets of claims: claims of its own and claims belonging to the selling shareholders. Since the district court has dismissed the claims AMI asserted in the latter capacity and has refused to allow the selling shareholders to pursue their own claims, that dismissal was plainly a final disposition of the separate claims of parties other than AMI. Accordingly, entry of a final judgment pursuant to Rule 54(b) was appropriate with respect to those claims, so long as the district court did not abuse its discretion in certifying that there was no just reason for delay.
 
 
 32
 In concluding that such certification was warranted in order to permit AMI to appeal the dismissal of the assignment claims immediately, the district court principally cited the interests of judicial efficiency. AMI's own claims under § 10(b) and Rules 10b-5 and 10b-21 have not been dismissed and remain to be tried. Those claims and the claims of the selling shareholders center on a single offering of AMI stock, as affected by a single course of conduct by defendants. If the selling shareholders' claims are to be reinstated, it plainly will be more efficient for that reinstatement to occur in time for trial of AMI's and the selling shareholders' claims together, for then only one jury, rather than two, will be required to become familiar with the terms of and the events surrounding the offering and defendants' short sale. In addition, there may well be other similar, albeit perhaps not identical as to all of the sellers, issues to be tried with respect to affirmative defenses asserted by defendants, which include waiver, estoppel, and failure to exercise due diligence. It would be more efficient for such issues to be tried together rather than piecemeal.
 
 
 33
 Finally, we note that though the district court's entry of the final Rule 54(b) judgment dismissing the selling shareholders' claims may result in piecemeal appeals, those appeals will present virtually no overlapping issues to the reviewing panels. The issues presented in the present appeal, concerning the validity of the assignments and the denial of leave to name the selling shareholders as the plaintiffs on their own claims, are entirely unrelated to the merits of the claims that are to be tried. Nothing that will be aired at trial can be expected to shed light on the assignment questions before us in the present appeal; and to the extent that AMI's claims under § 10(b) and Rules 10b-5 and 10b-21 may be the subject of a future appeal, that appeal will have no relationship to the validity of the assignments.
 
 
 34
 We conclude that the district court's certification of the dismissal of the claims asserted by AMI as assignee was within the scope of its discretion, and we turn to the merits of that dismissal.
 
 2. The Validity of the Assignments
 
 35
 In general, claims or choses in action may be freely transferred or assigned to others. See, e.g., Titus v. Wallick, 306 U.S. 282, 288-89, 59 S.Ct. 557, 561, 83 L.Ed. 653 (1939); Cosmopolitan Trust Co. v. Leonard Watch Co., 249 Mass. 14, 143 N.E. 827, 829 (1924). In order to make a valid assignment, the owner must manifest "an intention to make the assignee the owner of [the] claim." Id. The validity of an assignment that meets this condition is not affected by the parties' additional agreement that the transferee will be obligated to account for the proceeds of a suit brought on the claim. See, e.g., Titus v. Wallick, 306 U.S. at 289, 59 S.Ct. at 561; Hill v. Satra Corp., 65 A.D.2d 737, 737, 410 N.Y.S.2d 614, 614 (1st Dep't 1978); In re Bajkic's Estate, 36 Misc.2d 398, 233 N.Y.S.2d 116, 119 (Sur.Ct.1962); Airlines Reporting Corp. v. S & N Travel, Inc., 857 F.Supp. 1043, 1046-47 (E.D.N.Y.1994), aff'd, 58 F.3d 857 (2d Cir.1995). Nor need the owner of the claim use a particular form of assignment, see, e.g., Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc., 10 A.D.2d 372, 376, 199 N.Y.S.2d 852, 855 (4th Dep't 1960), so long as the language manifests his intention to transfer at least title or ownership, Titus v. Wallick, 306 U.S. at 289, 59 S.Ct. at 561, i.e., to accomplish "a completed transfer of the entire interest of the assignor in the particular subject of assignment," Coastal Commercial Corp. v. Samuel Kosoff & Sons, Inc., 10 A.D.2d at 376, 199 N.Y.S.2d at 855.
 
 
 36
 A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim. See, e.g., Spencer v. Standard Chemicals & Metals Corp., 237 N.Y. 479, 482, 143 N.E. 651 (1924). The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name. See, e.g., Titus v. Wallick, 306 U.S. at 289, 59 S.Ct. at 561.
 
 
 37
 In the present case, the agreements relied on by AMI merely conferred on it, with respect to the individual selling shareholders' claims, "the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings." These writings thereby arguably gave AMI power of attorney to bring suit in the names of the individual selling shareholders, but they did not purport to transfer title or ownership to AMI. Although the AMI-MLTV letter agreement also gave AMI authority to conduct an action on behalf of MLTV without naming MLTV as a plaintiff, that authorization was in no way a transfer of ownership. Rather, in that letter, not only did MLTV retain the right to receive its pro rata share of the proceeds of litigation, it also retained the right to terminate AMI's authority to pursue MLTV's claims ("MLTV reserves the right to terminate its participation if it later concludes that, based on the results of discovery or the general course of the litigation, it is in its best interests to do so."). Plainly, none of these provisions constituted assignments to AMI of ownership of the shareholders' claims; nor did any other part of the proffered writings indicate that the shareholders were transferring title or ownership.
 
 
 38
 AMI's reliance on Titus v. Wallick and its progeny for the proposition that an assignment can be effective even where the parties make separate provision for the assignor to receive a share of the proceeds recovered on the assigned claim is misplaced, for that proposition assumed that there had been a proper transfer of ownership. The pertinent agreement in Titus v. Wallick, for example, conveyed to the plaintiff " 'all [the owner's] right, title and interest' in the claim." 306 U.S. at 286, 59 S.Ct. at 560. Titus stands for the proposition that the addition of an accounting provision does not negate the owner's manifestation of his intent to transfer ownership of the claim, not that such a manifestation is unnecessary.
 
 
 39
 We conclude that the district court properly ruled that the agreements were insufficient to transfer to AMI ownership of the claims of the selling shareholders and hence were insufficient to permit AMI to sue on those claims in its name. Accordingly, we turn to the question of whether the district court should have allowed an amendment of the complaint to permit the selling shareholders to enter as plaintiffs to pursue their respective claims in their own names.
 
 3. The Denial of Leave To Amend
 
 40
 Preliminarily, we reject defendants' contention that the district court's denial of leave to amend is not appealable because that ruling was not included within the court's Rule 54(b) certification. In its 1996 Opinion, the court noted that, in opposition to defendants' motion to dismiss, AMI requested that, if the assignments were held ineffective, leave be granted to make the selling shareholders the named plaintiffs with respect to their claims, see 1996 Opinion at 9; the court denied that request, citing the Rule 15(c)(3) statute-of-limitations rationale stated in its 1994 denial of AMI's original request for leave to amend, see 1996 Opinion at 9-10. The court then expressly entered its Rule 54(b) certification not only with respect to the standing of AMI but also with respect to "the other issues resolved by this opinion." 1996 Opinion at 23. The refusal to allow amendment to permit the selling shareholders to pursue their own claims was plainly, and properly, included. That issue is also reasonably included in the notice of appeal filed by AMI challenging the dismissal of the claims belonging to the selling shareholders.
 
 
 41
 Rule 15(a) of the Federal Rules of Civil Procedure instructs courts that leave to amend should be "freely given." Fed.R.Civ.P. 15(a); see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Leave to amend need not be granted, however, where the proposed amendment would be "futil[e]." See id. The district court here concluded that the proposed amendment would be futile on the ground that the selling shareholders' assertion of their own claims in the proposed amended complaint would be barred by the statute of limitations because the amendment would not relate back to the date of the original complaint pursuant to Rule 15(c). Whether or not the amended complaint would relate back under Rule 15(c), however, we conclude that the court erred in limiting its focus to Rule 15. The request to make the selling shareholders the named plaintiffs on their own claims should have been considered in light of Fed.R.Civ.P. 17, and the amendment should have been found to relate back pursuant to Rule 17(a).
 
 
 42
 Rule 15(c), as revised in 1991, provides, in part, as follows:
 
 
 43
 (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
 
 
 44
 ....
 
 
 45
 (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
 
 
 46
 (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and ... the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 
 
 47
 Fed.R.Civ.P. 15(c). The goal of relation-back principles is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." Fed.R.Civ.P. 15 Advisory Committee Note (1991).
 
 
 48
 While Rule 15(c) is framed in terms of an amendment that would change the party "against" whom a claim is asserted and of the new party's ability to maintain a "defense," it is also applicable to a proposed change of plaintiffs. In Staren v. American National Bank & Trust Co., 529 F.2d 1257 (7th Cir.1976), for example, the court ruled that even though the statute of limitations had run by the time a motion was made to amend the complaint to substitute a corporate plaintiff for the individual shareholders who were the original plaintiffs, the district court should have allowed the substitution since the corporation was arguably the purchaser of the securities in the transaction challenged in the complaint. See id. at 1263-64. The court of appeals ruled that the amendment would relate back to the date of the original complaint pursuant to Rule 15(c), and indicated that such substitutions of plaintiffs should normally be freely allowed:
 
 
 49
 The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based. The courts have freely upheld the filing of an amended complaint under these circumstances.
 
 
 50
 Id. at 1263.
 
 
 51
 The history of the Rules makes clear not only that Rule 15 was meant to be generally applicable to a proposed change of plaintiffs, but that in this regard Rule 17(a) is implicated as well:
 
 
 52
 The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs. Also relevant is .. . Rule 17(a) (real party in interest). To avoid forfeitures of just claims, ... Rule 17(a) ... provide[s] that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for correction of the defect ....
 
 
 53
 Fed.R.Civ.P. 15 Advisory Committee Notes (1966) (emphasis added). Rule 17 begins by providing that "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). This provision, which we view as applying not only to entire actions but also to separate claims within an action, see, e.g., Wadsworth v. United States Postal Service, 511 F.2d 64, 65-67 (7th Cir.1975); see generally Fed.R.Civ.P. 1 (Federal Rules of Civil Procedure "shall be construed and administered to secure the just ... determination of every action"), is applicable in the present case because if AMI has no standing to pursue the claims of the selling shareholders, it is precisely because the selling shareholders are, with respect to those claims, the real parties in interest. Rule 17(a) goes on to provide, in pertinent part, as follows:
 
 
 54
 No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ... substitution of[ ] the real party in interest; and such ... substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.
 
 
 55
 Fed.R.Civ.P. 17(a) (emphasis added). Although the district court retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of an incorrect party, see generally 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1555, at 415 (2d ed.1990), there plainly should be no dismissal where "substitution of the real party in interest is necessary to avoid injustice," id. See, e.g., Fed.R.Civ.P. 15 Advisory Committee Notes (1966) (Rule 17(a) is designed "[t]o avoid forfeitures of just claims"); Raynor Bros. v. American Cyanimid Co., 695 F.2d 382, 385 n. 4 (9th Cir.1982) (relation back of product-liability claim would be allowed after substitution of lessee, a partnership, for corporation partly owned by members of the partnership); Metropolitan Paving Co. v. International Union of Operating Engineers, 439 F.2d 300, 306 (10th Cir.) (relation back of unfair labor practices claim allowed after substitution of individual corporate members of a joint venture for the joint venture itself), cert. denied, 404 U.S. 829, 92 S.Ct. 68, 30 L.Ed.2d 58 (1971); Crowder v. Gordons Transports, Inc., 387 F.2d 413, 417-18 (8th Cir.1967) (relation back of wrongful-death claim allowed after substitution of surviving children's guardian for decedent's administratrix). A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.
 
 
 56
 We see no good reason why Rule 17(a) should not have been applied here to allow the amendment proposed by AMI. The claims of the selling shareholders are sufficiently asserted in the original complaint, which identifies each selling shareholder by name, asserts that defendants' conduct caused each selling shareholder to receive 50 cents less per share than he or she otherwise would have received, and alleges the number of shares that each of those shareholders sold in the AMI public offering. The alleged ad damnum includes the recovery sought on the selling shareholders' claims. The complaint's only pertinent flaw was the identity of the party pursuing those claims, and the proposed amended complaint submitted to the court with AMI's motion was, except for naming the selling shareholders as the plaintiffs on their own claims, virtually identical to the original complaint. Though defendants' challenge to the original complaint was styled a motion to dismiss for lack of standing, their unspoken premise was that AMI lacked standing because the selling shareholders remained, with respect to their own claims, the real parties in interest. Hence, the motion to amend was in essence a motion for substitution of the real parties in interest on the selling shareholders' claims. The form of the respective contentions should not have been allowed to obscure their substance.
 
 
 57
 Although the district court characterized AMI's assertion of the shareholders' claims as "tactical" and "strategic," see, e.g., 1994 Opinion at 8, 9, those characterizations do not make Rule 17 inapplicable. The attempted assignment was a tactic meant to allow AMI to sue as assignee of the selling shareholders; but assignments are not impermissible. There plainly was a mistake as to the legal effectiveness of the documents to permit AMI to sue as assignee. However, the court did not refer to any evidence suggesting that the mistake itself was deliberate or tactical, and we have been pointed to no evidence that would indicate that the attempted assignments were undertaken in bad faith or in an effort to deceive or prejudice the defendants.
 
 
 58
 Nor do we see any unfairness to defendants in allowing substitution of the selling shareholders as plaintiffs on their respective claims. The original complaint plainly gave defendants the particulars of the selling shareholders' claims, and the attempt to substitute the selling shareholders was made within a reasonable time. Leave to amend was requested even prior to defendants' motion to dismiss, and the request was renewed in response to defendants' first formal "objection," i.e., their motion to dismiss. AMI and the selling shareholders erred in believing that their assignment agreements had the legal effect of permitting the claims to be pursued in the name of AMI. If, as alleged, however, defendants violated the pertinent securities laws and thereby caused the selling shareholders to lose thousands of dollars, it would be unjust to allow defendants to foreclose pursuit of those claims by taking advantage of that otherwise inconsequential error.
 
 
 59
 We conclude that leave to file the proposed amended complaint substituting the selling shareholders as plaintiffs to pursue their own claims should have been granted under Rule 17(a). Those claims will relate back to the date of the original complaint under the express terms of that Rule.
 
 B. The § 10(a) and Rule 10a-1 Claims
 
 60
 We do not reach the merits of the district court's dismissal of so much of the complaint as alleged violations of § 10(a) and Rule 10a-1, for we conclude for several reasons that that dismissal was not properly included in the final judgment and hence is not yet appealable.
 
 
 61
 First, we note that the propriety of the Rule 54(b) certification as to one ruling, such as the dismissal here of the claims of the selling shareholders, does not give the district court carte blanche to include in the final Rule 54(b) judgment other rulings that could not properly be certified on their own. Yet in directing that the dismissal of AMI's § 10(a) and Rule 10a-1 claims be included in the final judgment, the district court gave no indication that there was any judicial efficiency to be gained or any danger of hardship or injustice to be avoided through an immediate appeal as to those claims, nor any other explanation as to why a final judgment should be entered immediately as to those claims. Rather the court simply "extend[ed] the Rule 54(b) direction to" that dismissal "[s]ince there will be an intermediate appeal (if AMI is so advised)." 1996 Opinion at 23. This statement provides no reason for immediate review of the dismissal of the § 10(a) and Rule 10a-1 claims. The absence of an appropriate explanation for entry of a Rule 54(b) certification with respect to the § 10(a) and Rule 10a-1 claims is itself a basis for dismissing the appeal with respect to those claims. See generally National Bank of Washington v. Dolgov, 853 F.2d 57, 58 (2d Cir.1988) (per curiam); Cullen v. Margiotta, 618 F.2d 226, 228 (2d Cir.1980) (per curiam); Brunswick Corp. v. Sheridan, 582 F.2d 175, 183 (2d Cir.1978); Arlinghaus v. Ritenour, 543 F.2d 461, 463-64 (2d Cir.1976) (per curiam).
 
 
 62
 Second, though AMI's claims under § 10(a) and Rule 10a-1 are set out in a section of the complaint entitled "SECOND CAUSE OF ACTION," with its claims under § 10(b) and Rules 10b-5 and 10b-21 having been set out in the section denominated "FIRST CAUSE OF ACTION," we doubt whether the two sections could properly be considered "more than one claim" within the meaning of Rule 54(b). Claims are normally treated as separable within the meaning of that Rule if they involve at least some different questions of fact and law and could be separately enforced, see United States v. Kocher, 468 F.2d 503, 509 (2d Cir.1972), cert. denied, 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973), or if "different sorts of relief" are sought, see Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 580-81 & n. 18, 100 S.Ct. 800, 805-06 & n. 18, 63 L.Ed.2d 36 (1980); see also 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2657, at 67 (2d ed.1983) (claims are separable when there is more than one possible recovery and the recoveries are not mutually exclusive).
 
 
 63
 Here, though different provisions of the securities laws are invoked in the two "CAUSE[S] OF ACTION," we see no different factual questions. The "second" cause of action incorporates by reference all of the allegations of the "first" cause of action; and while also reiterating some of the allegations made in the first cause of action, the "second" adds no new factual assertions. In both causes of action, the alleged conduct is the same, and the requested damages are the same. The difference between the "first" and the "second" is simply the invocation of different securities law provisions. At oral argument of this appeal, AMI conceded that if its § 10(a) and Rule 10a-1 claims were to be tried, it would not present evidence of any fact that would not be presented at the trial that is to be held on its claims under § 10(b) and Rules 10b-5 and 10b-21. We cannot conclude that the more-than-one-claim standard of Rule 54(b) is met.
 
 
 64
 Third, any claim under § 10(a) and Rule 10a-1, whether or not this Court upheld AMI's novel proposition that there exists a private right of action under those provisions, would be entirely mooted if AMI recovers on the surviving claims under the well established principles of § 10(b) and Rules 10b-5 and 10b-21. Efficiency in the administration of justice is not advanced by requiring immediate appellate consideration of a novel legal question that may well be mooted by a routine disposition in the district court.
 
 
 65
 For all of the above reasons, we conclude that inclusion of the dismissal of the § 10(a) and Rule 10a-1 claims in the final judgment was inappropriate. Those claims could not properly be certified pursuant to Rule 54(b) for immediate appeal.
 
 
 66
 Finally, we note in passing that, with respect to the merits of the dismissal of those claims, AMI has presented this Court with excerpts of legislative history that were not presented to the district court and that may bear on the existence vel non of Congress's intent to provide a private right of action to investors injured by violations of those provisions. Since the dismissal of the § 10(a) and Rule 10a-1 claims remains interlocutory, and therefore subject to appropriate revision until all claims have been adjudicated, see generally Leonhard v. United States, 633 F.2d 599, 608 (2d Cir.1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981), it remains open to AMI to ask the district court to revisit its ruling in light of the newly discovered history. We express no view as to whether such reconsideration would be warranted or as to the merits of the issue.
 
 CONCLUSION
 
 67
 For the foregoing reasons, we dismiss for lack of appellate jurisdiction AMI's appeal from the district court's dismissal of its claims asserted under § 10(a) of the 1934 Act and SEC Rule 10a-1. We vacate so much of the judgment as dismissed the claims of the selling shareholders. The matter is remanded for the filing of an amended complaint substituting the selling shareholders as the named plaintiffs on their own respective claims, and for further proceedings not inconsistent with this opinion.
 
 
 68
 Each party shall bear its own costs of this appeal.