**ACCIAI SPECIALI TERNI USA, INC., Plaintiff,**

v.

**Rafael MOMENE and Ems Indus. Corp., Defendants.**

**No. 00 CIV.3202 RLE.**

United States District Court, S.D. New York.

May 10, 2002.

Edward I. Sussman, New York City, for Plaintiff.

William S. Gyves, Entwistle & Cappucci LLP, New York City, for Defendants.

### OPINION AND ORDER

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Acciai Speciali Terni USA, Inc. ("AST–USA") filed a complaint against de-

fendants Rafael Momene ("Momene") and EMS Industrial Corporation ("EMS") in the Supreme Court of the State of New York, County of New York, on May 25, 1999. On April 11, 2000, AST–USA filed an amended complaint claiming damages for breach of contract, breach of fiduciary duty and diversion of sales. On April 24, 2000, defendants removed the case to federal court asserting diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). On March 30, 2001, Momene and EMS (collectively, "defendants") moved for partial summary judgment on the first, third, and ninth causes of action pursuant to Rule 56 of the Federal Rules of Civil Procedure. AST–USA filed its own motion for partial summary judgment on the sixth, seventh, and eighth causes of action on April 2, 2001. For the reasons discussed below, both parties' motions are **GRANTED**.

## II. BACKGROUND

### A. Factual History

AST–USA is a domestic corporation organized and existing under the laws of the State of New York which markets stainless steel and other metal products in the form of sheets and coils. Amended and Supplemental Complaint ("Amd.Cmplt.") at ¶ 1; Defendants' Local Rule 56.1(a) Statement of Undisputed Material Facts at 1. EMS is a corporation organized under the laws of the State of Delaware, and is engaged in the wholesale industrial metals business, specializing in marketing, selling, and/or trading specialty steel products in the Latin American market. *Id.* Momene is the president and sole shareholder and director of EMS, and has been actively involved in the business of marketing, selling, and/or trading industrial metals throughout the world for approximately two decades. Memorandum of Law in Support of Defendants' Motion for Partial Summary Judgment ("Def.Mem.") at 3.

In 1996, Enrico Chevallar ("Chevallar"), then-executive vice president of AST–USA, initiated discussions with Momene about a possible business relationship between AST–USA and EMS. *Id.* at 5. In early December 1996, Chevallar and Momene executed a written agreement whereby "Raphael Momene EMS Industrial Corporation" was named AST–USA's exclusive sales representative for Central and South America, *id.* at 6, and was required to establish sales offices for AST–USA in Columbia, Peru, and Venezuela, and AST–USA would defray $3,000 per month for each office. Amd. Cmplt. at ¶ 12. In December 1997, the parties identified as AST–USA and "Raphael Momene EMS Industrial Corporation," Def. Mem. at 6, entered into a new agreement which again authorized defendants to act as AST–USA's exclusive sales representative in South America and Central America. Amd. Cmplt. at ¶ 14. Both the 1996 and 1997 agreements provided that AST–USA would pay defendants a two percent commission of net sales prices on orders obtained by defendants. *Id.* at ¶ 15.

According to AST–USA, from late 1997 through mid–1998, defendants expressed dissatisfaction with the terms and conditions of the parties' arrangement, and advised AST–USA that they would resign as AST–USA's representative unless changes were made. *Id.* at ¶ 18. By the end of 1998, the relationship between the parties had deteriorated, leading to a termination of the relationship. *Id.* at ¶ 19. According to AST–USA, even after the termination of the relationship, defendants continued to demand further and additional compensation from it. *Id.* at ¶¶ 20, 22.

According to defendants, EMS generated numerous orders from Latin American customers, but AST–USA was unable or

unwilling to fill the orders in a capable and timely fashion. Def. Mem. at 7. In order to restore customer confidence, EMS began placing orders with Acciai Speciali Terni Espana DVD, S.A. ("AST–Spain") pursuant to an agreement between AST–Spain and "EMS Industrial Corporation." *Id.* at 10. Although the business relationship between EMS and AST–USA continued to deteriorate through 1998, AST–USA sent EMS a contract which Momene signed and returned, extending their business relationship. *Id.* at 8. Defendants maintain that on January 5, 1999, Mario Pecciarini ("Pecciarini"), Chevallar's replacement as of mid–1997, sent a letter stating that the parties' agreement was cancelled as of January 1, 1999, and requesting that Momene "reply via a written notice" of his acceptance. *Id.* Momene, however, did not respond. *Id.* According to defendants, throughout early 1999, EMS and AST–USA continued to exchange correspondences about the termination of their relationship, and the instant litigation followed.

## B. Procedural History

The instant case was first filed in the New York State Supreme Court, New York County. An amended complaint was filed on April 11, 2000, asserting that AST–USA: (1) required a declaratory judgment that the relationship between the parties terminated as of December 31, 1998; (2) was entitled to recover the sum of $16,752, which was paid in excess of commissions owed to defendants; (3) requested that the court permanently enjoin defendants from further violating their duty to maintain the confidentiality of proprietary information; (4) reserved the right to amend the complaint to allege damages incurred as a result of defendants' diversion of sales; (5) reserved the right to amend the complaint to allege damages incurred as a result of defen-

dants' breach of duty to not engage in conduct that was detrimental to AST–USA; (6) was assigned a claim which the defendants owed to AST–Spain in the amount of $354,179.95; (7) was assigned a claim which is owed to AST–Spain, based on thirteen invoices of goods sold and delivered to defendants; (8) was assigned a claim to an account stated between AST–Spain and the defendants in the amount of $354,179.95; and (9) was damaged by defendant Momene, who created EMS as his alter ego to evade liability. Amd. Cmplt. at ¶¶ 24–60. On April 26, 2000, the case was removed to federal court and was assigned to Judge Robert W. Sweet.

On March 30, 2001, defendants filed their motion for partial summary judgment on the first, third, and ninth causes of action pursuant to Rule 56 of the Federal Rules of Civil Procedure. On April 2, 2001, AST–USA filed its own motion for partial summary judgment on the sixth, seventh, and eighth causes of action. On October 18, 2001, the parties consented to transfer all proceedings to the undersigned. 28 U.S.C. § 636(c).

## III. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the party moving for summary judgment has met its initial burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to bring forth specific facts to show that

there is a factual question that must be resolved at trial. *See* Fed.R.Civ.P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Additionally, the court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Id.* at 252, 106 S.Ct. 2505; *see also Pauling v. Sec'y of Dep't of Interior,* 160 F.3d 133, 136 (2d Cir.1998).

Although the court is required to view inferences in the light most favorable to the party opposing the motion, that "party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995) (*quoting Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)). " '[M]ere conclusory allegations or denials' in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Id.* (*quoting Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir. 1980)).

In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36–37 (2d Cir.1994); *see also Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgment should be granted where no reasonable trier of fact could find in favor of the nonmoving party, *H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005,

1011 (2d Cir.1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir.1987).

### B. Defendants' Motion for Partial Summary Judgment

#### 1. First Cause of Action—Declaratory Judgment

This Court has the authority to render a declaratory judgment and "may declare the rights and other legal relations of any interested party seeking such declaration. . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a) (West 1994). Courts generally entertain declaratory judgments "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Casualty Co. v. Coastal Savs. Bank,* 977 F.2d 734, 737 (2d Cir.1992) (*citing Broadview Chem. Corp. v. Loctite Corp.,* 417 F.2d 998, 1001 (2d Cir.1969), *cert. denied,* 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970)). "[W]here 'the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.'" *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exchange Inc.,* 24 F.3d 427, 431 (2d Cir. 1994) (*quoting Browning Debenture Holders' Comm. v. DASA Corp.,* 524 F.2d 811, 817 (2d Cir.1975)).

In its first cause of action, AST–USA seeks a declaratory judgment stating "that the relationship between the parties terminated as of December 31, 1998." Amd. Cmplt. at ¶ 26. The termination date of the parties' business relationship, however, is factually contested, and resolution of

that issue alone would not settle nor end the underlying breach of contract issues involved in this case. Therefore, the Court finds that such relief would be inappropriate in the instant case and hereby **GRANTS DEFENDANTS' MOTION** for summary judgment on the first cause of action.

## 2. Third Cause of Action—Permanent Injunction

The standard for a permanent injunction is essentially the same as for a preliminary injunction in that the movant must make a showing of "irreparable injury," or rather injury that cannot be redressed through financial compensation. *Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 915 F.Supp. 622, 631 (S.D.N.Y.1996). A person seeking a permanent injunction, however, must also demonstrate *actual* success on the merits, rather than a *likelihood* of success on the merits. *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987); *Housing Works, Inc. v. Safir*, 101 F.Supp.2d 163, 167 (S.D.N.Y.2000).

In its third cause of action, AST–USA requests that the Court permanently enjoin defendants "from further violation of their duty to maintain confidentiality" of proprietary information. Amd. Cmplt. at ¶¶ 32, 35. In a letter to the Court dated December 5, 2001, however, AST–USA indicated that it does not object to the dismissal of this cause of action. Moreover, the Court notes that the record does not contain any indicia of such violation, let alone irreparable injury. Therefore, the Court finds that such relief would be inappropriate in the instant case and hereby **GRANTS DEFENDANTS' MOTION** for summary judgment on the third cause of action.

## 3. Ninth Cause of Action—Alter Ego/Piercing the Corporate Veil

According to New York's choice of law principles, "[t]he law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995) (*quoting Fletcher v. Atex, Inc.*, 861 F.Supp. 242, 244 (S.D.N.Y.1994)); *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir.1993). Because the company in issue, EMS, is a Delaware corporation, and both parties have relied on Delaware law in their briefs, this Court will apply Delaware law.

According to Delaware law, courts can pierce the corporate veil of a company "'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.'" *Fletcher*, 68 F.3d at 1457 (2d Cir.1995) (*quoting Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del.Ch. 1992)). There is no requirement of fraud under the alter ego theory. *Id.* To prove an alter ego claim, a plaintiff must satisfy the two-prong test "(1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness ... [is] present.'" *Id.* (*quoting Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1085 (D.Del.1990), *aff'd*, 932 F.2d 959 (3rd Cir.1991)). "Piercing the corporate veil under the alter ego theory 'requires that the corporate structure cause fraud or similar injustice.'" *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del.Ch.1999) (*citing Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 729 (1996)). Thus, a court may pierce the corporate veil if (1) there are alter ego factors including "whether the corporation was adequately capitalized for the corporate undertaking;

whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder" and (2) there is an "element of injustice or unfairness." *United States v. Golden Acres, Inc.*, 702 F.Supp. 1097, 1104 (D.Del.1988), *aff'd*, 879 F.2d 860 (3d Cir.1989); *Pereira v. Cogan*, 2001 WL 243537, at *21 (S.D.N.Y. Mar. 8, 2001). Although " 'no single factor could justify a decision to disregard the corporate entity, . . . some combination of them [is] required, and . . . an overall element of injustice or unfairness must always be present. . . .' " *Harper*, 743 F.Supp. at 1085 (*quoting Harco Nat. Ins. Co. v. Green Farms. Inc.*, 1989 WL 110537, at *5 (Del. Ch. Sept. 19, 1989)). "This standard has been applied in cases involving veil piercing as between a corporation and its shareholders or directors." *Pereira*, 2001 WL 243537, at *21 (*citing David v. Mast*, 1999 WL 135244, at *2 (Del.Ch. Mar. 2, 1999)).

In its ninth cause of action, AST–USA alleges that EMS "has no separate existence except as the alter ego of the individual defendant Rafael Momene and said individual defendant is equally liable for the debts and obligations of EMS Industrial Corp." Amd. Cmplt. at ¶ 60. In its response to EMS's motion for partial summary judgment, however, AST–USA does not refer to any evidence in the record sufficiently indicating that EMS and Momene " 'operated as a single economic entity,' " *Harper*, 743 F.Supp. at 1085 (*quoting Mabon, Nugent & Co. v. Texas American Energy Corp.*, 1990 WL 44267, at *5 (Del. Ch. April 12, 1990)), or evincing an "overall element of injustice or unfairness." *Id.* (*quoting Harco National Insurance Co. v.*

*Green Farms Inc.*, 1989 WL 110537, at *5 (Del.Ch. Sept. 19, 1989)).

In addressing the first prong of its alter ego claim, AST–USA alleges that "documentary evidence reveals that in his dealings with AST–USA, Momene and EMS acted as a single entity." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 4. AST–USA contends that EMS and Momene are indistinguishable because of the following factors: the agreements are signed only by Momene; orders were placed with AST–USA by EMS; Momene individually received all of the commission payments; Momene instructed AST–USA to wire transfer funds to his personal bank account; Momene personally received reimbursement of expenses incurred on behalf of EMS; and Momene was individually designated on sales documentation as the sales representative. *Id.* at *7. In support of these contentions, AST–USA relies on the declaration of Mario Pecciarini, the executive Vice–President of AST–USA. In relevant part, the declaration attaches copies of invoices and checks, and states that Momene sent invoices on his personal letterhead, received monthly advances against commissions, and personally accepted payments from AST–USA, including a payment of funds wire-transferred directly to his personal account. Declaration of Mario Pecciarini in Opposition to Motion for Partial Summary Judgment at ¶ 7, Exhs. J, K, L. Although these exhibits might be some evidence of "commingling of assets between the shareholder[ ] and the corporation," *Pereira*, 2001 WL 243537, at *21, AST–USA does not demonstrate the existence of other factors—such as undercapitalization, insolvency, siphoning of funds, a lack of corporate formalities—that would compel a piercing of the corporate veil. *See Harper*, 743 F.Supp. at 1085; *see also*

*Golden Acres,* 702 F.Supp. at 1104. Therefore, the Court finds that AST–USA has failed to show the requisite combination of factors needed to demonstrate the existence of a "single economic entity" justifying the piercing of the corporate veil.

Furthermore, even if this Court were to find that AST–USA has made a sufficient showing of a "single economic entity," AST–USA has not made any factual allegations, nor directed the Court to any documentary evidence of any "injustice or unfairness" needed to satisfy the second prong of the test establishing an alter ego. Because this prong "must always be present," *Harper,* 743 F.Supp. at 1085, this Court finds that AST–USA has failed to show evidence that would justify disregarding the corporate form under Delaware law, this Court hereby **GRANTS DEFENDANTS' MOTION** for summary judgment on the ninth cause of action.

## C. Plaintiff's Motion for Partial Summary Judgment—Sixth, Seventh and Eighth Causes of Action

" 'No particular words or phrases are necessary to effect an assignment.' " *Richstone v. Chubb Colonial Life Ins.,* 1999 WL 287332, at *6 (S.D.N.Y. May 7, 1999) (*quoting Caribe Carriers, Ltd. v. C.E. Heath & Co.,* 784 F.Supp. 1119, 1126 (S.D.N.Y.1992)). "In order to make a valid assignment, the owner must manifest 'an intention to make the assignee the owner of [the] claim.' " *Advanced Magnetics, Inc., v. Bayfront Partners, Inc.,* 106 F.3d 11, 17 (2d Cir.1997). The owner of the claim does not have to use a "particular form of assignment, so long as the language manifests his intention to transfer at least title or ownership, to accomplish 'a completed transfer of the entire interest of the assignor in the particular

subject of assignment.' " *Id.* (citations omitted).

In AST–USA's amended complaint, the sixth, seventh, and eighth causes of action are predicated on the alleged assignment of claims from AST–Spain to AST–USA. In support of its motion, AST–USA references invoices in the record that evidence debts owed by defendants to AST–Spain, as well as submits sworn declarations from signatories to the assignment between AST–USA and AST–Spain. In its opposition to the motion, defendants assert that because the record does not contain any evidence of an assignment from AST–Spain to AST–USA, AST–USA lacks standing to assert claims for debts owed by defendants to AST–Spain, and thus, the sixth, seventh, and eighth causes of action must be dismissed. Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment at 1. According to defendants, no one with personal knowledge of the alleged assignment has submitted a sworn statement attesting to the assignment. *Id.* Defendants also attack the authenticity of the document written in Spanish that AST–USA represents to be the assignment agreement. *Id.* In reply, AST–USA maintains that two signatories to the agreement, Pecciarini and Jose Ramon Abad Baldellau, have submitted declarations attesting to the assignment, and that a professional translator has provided a sworn statement attesting to the translation of the document represented to be the assignment agreement. Plaintiff's Reply Memorandum of Law in Support of Motion for Summary Judgment at 2; Declaration of Jose Ramon Abad Baldellau; Declaration of Mario Pecciarini; Certificate of Accuracy.

Although defendants attack the evidence proffered by AST–USA, those attacks can be reduced to mere conclusory allegations and denials. Defendants fail to

offer any evidence in the record to create a genuine issue of material fact as to the assignment. Therefore, this Court hereby **GRANTS PLAINTIFF'S MOTION** for summary judgment on the sixth, seventh, and eighth causes of action.

## IV. CONCLUSION

Having decided that (1) AST–USA has failed in its burden to show that no triable issues of fact exist on the first, third, and ninth causes of action, and (2) that EMS and Momene has failed in its burden to show that no triable issues of fact exist on the sixth, seventh, and eighth causes of action, the Court **GRANTS** defendants' and plaintiff's motions for partial summary judgment.