CORTLANDT STREET RECOVERY CORP., Plaintiff–Appellant,

v.

HELLAS TELECOMMUNICATIONS, S.À.R.L., Hellas Telecommunications I, S.à.r.l, Hellas Telecommunications Co–Invest Ltd., Hellas Telecommunications Employees Ltd., TCW HT–Co–Invest I L.P., TCW HT–Co–Invest II L.P., Defendants–Appellees.*

Docket No. 13–3325.

United States Court of Appeals, Second Circuit.

Argued: May 8, 2014.

Decided: June 24, 2015.

conform with the caption above.

Jared B. Stamell, Stamell & Schager, LLP, New York, N.Y. (Andrew R. Goldenberg, Stamell & Schager, LLP, New York, N.Y., on the brief), for Plaintiff–Appellant.

Robert S. Fischler, Ropes & Gray LLP, New York, N.Y. (Eyan P. Lestelle, Ropes & Gray LLP, New York, N.Y., Paul M. O'Connor III, David J. Abrams, Kasowitz, Benson, Torres & Friedman LLP, New York, N.Y., on the brief), for Defendants–Appellees Hellas Telecommunications Co–Invest Ltd., Hellas Telecommunications Employees Ltd., TCW HT–Co–Invest I L.P., and TCW HT–Co–Invest II, L.P.

Dwight A. Healy, White & Case LLP, New York, N.Y. (Katherine J. Mims, of counsel, White & Case LLP, New York, N.Y., on the brief), for Defendants–Appellees Hellas Telecommunications, S.à.r.l., and Hellas Telecommunications I, S.à.r.l.

Before: JACOBS, SACK, and LYNCH, Circuit Judges.

SACK, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*) dismissing the plaintiff's claims without prejudice for lack of standing. The plaintiff appeals from that decision and from the district court's denial of the plaintiff's request to attempt to cure the standing defect by having the real party in interest "ratify, join, or be substituted into the action" pursuant to Fed.R.Civ.P. 17(a)(3). Because we agree that the plain-

tiff lacked standing to pursue its stated claims, and because we conclude that the district court did not abuse its discretion in declining to allow ratification, joinder, or substitution under Rule 17(a)(3), we affirm.

## BACKGROUND

Cortlandt Street Recovery Corp. ("Cortlandt"), a New York corporation, is attempting to collect approximately € 83.1 million allegedly owed to it under defaulted "Subordinated Notes" ("Sub Notes") issued in 2006 by a now-dissolved entity, Hellas Telecommunications (Luxembourg) II, S.C.A. ("Hellas II"). Cortlandt alleges that the holders of the Sub Notes, citizens severally of Greece, the British Virgin Islands, the Cayman Islands, and Gibraltar assigned Cortlandt a portion of the notes in 2011, thereby authorizing Cortlandt to bring the present action.[1]

Cortlandt contends, in substance, that the private equity firms TPG Capital, L.P. ("TPG") and Apax Partners, LLP ("Apax"), which are not parties to the present suit, used the Sub Notes to defraud their creditors. According to Cortlandt, TPG and Apax owned a group of related foreign companies including Hellas II and defendants Hellas Telecommunications, S.à.r.l. and Hellas Telecommunications I, S.à.r.l., also Luxembourg entities (the "Hellas Defendants"). Cortlandt alleges that TPG and Apax issued promissory notes, in the name of one of the Hellas Defendants, pledging TPG's and Apax's equity in the company and its subsidiaries as collateral. According to Cortlandt, the firms then used the proceeds from this sale to buy their own collateral, rendering the Hellas entities insolvent.

Cortlandt argues that this process—termed a "bleed-out"—rendered both the Hellas Defendants and several now-dissolved foreign investment funds that owned or financed the Hellas entities[2] (the "Sponsor Defendants") liable to the noteholders or their assignees. In November 2012, Cortlandt, as purported assignee of the Sub Notes, filed a complaint against both sets of defendants in the United States District Court for the Southern District of New York claiming, *inter alia*, the right to payment under the Sub Notes, breach of contract, violations of prohibitions on distributions, fraudulent conveyances, and unjust enrichment. Cortlandt requested relief in the form of payment of the amounts owed on the Sub Notes, plus interest, and fees, costs, and expenses.

---

1. The only evidence of assignment that is in the record pertains to a tranche of notes unrelated to the Sub Notes. Cortlandt asserts here, as it did before the district court, however, that the language of this assignment is identical to the language of the Sub Notes assignment. We assume that to be true for purposes of this appeal. The relevant portion of the assignment reads:

> The Noteholder hereby assigns to Cortlandt Street Recovery Corp.·. . . full rights to collect amounts of principal and interest due on the Notes, and to pursue all remedies with respect to the Notes against Hellas Finance [or related entities] . . . and any other person or entity who may be liable to Noteholder. The Noteholder remains the owner of the Notes and person in whose name the Notes are registered.

The Noteholder hereby irrevocably appoints [Cortlandt] its true and lawful attorney and proxy, with full power of substitution, to pursue collection and all remedies with respect to the Notes. . . . Under this appointment [Cortlandt] shall have all requisite power and authority . . . to make any request or demand or to take any other action under or with respect to the Notes, or under the December 21, 2006 Indenture under which the Notes were issued.
J.A. 109–10.

2. These funds are Hellas Telecommunications Co–Invest Ltd., Hellas Telecommunications Employees Ltd., TCW HT–Co–Invest I L.P., and TCW HT–Co–Invest II L.P.

Cortlandt also filed several other lawsuits in state and federal court seeking to collect on the Sub Notes and on another tranche of notes it claims it was assigned, the so-called "PIK Notes," [3] which are not at issue in this case. *See, e.g., Cortlandt St. Recovery Corp. v. Aliberti,* No. 12 CIV. 8686 JPO, 2014 WL 941900, 2014 U.S. Dist. LEXIS 32041 (S.D.N.Y. Mar. 11, 2014), *on reconsideration,* 2014 WL 6907548, 2014 U.S. Dist. LEXIS 170277 (S.D.N.Y. Dec. 9, 2014); *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,* No. 12 CIV. 9351 JPO, 2013 WL 3762882, 2013 U.S. Dist. LEXIS 100741 (S.D.N.Y. July 18, 2013), *appeal dismissed* (Sept. 16, 2013); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.,* 47 Misc.3d 544, 996 N.Y.S.2d 476 (Sup.Ct.2014) (consolidating four actions initiated by Cortlandt on the Sub and PIK Notes).

In one of these other actions, Cortlandt brought suit on the Sub Notes against Deutsche Bank AG, London Branch ("Deutsche Bank"), alleging it to be an underwriter of the Sub Notes. *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,* No. 12 CIV. 9351 JPO, 2013 WL 3762882, 2013 U.S. Dist. LEXIS 100741 (S.D.N.Y. July 18, 2013) (the "*Deutsche Bank Opinion*"), *appeal dismissed* (Sept. 16, 2013); *see also* Complaint at 2, *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch,* No. 12 CIV. 9351 JPO, 2013 WL 3762882 (S.D.N.Y.2013). In both the Deutsche Bank action and the present one, the defendants moved to dismiss on several grounds, including that the court lacked subject matter jurisdiction over the action. *See* Fed.R.Civ.P. 12(b)(1). Specifically, the defendants argued that Cortlandt lacked title to the Sub Notes and therefore lacked

Article III standing to bring claims related to those notes. *See Deutsche Bank Op.,* 2013 WL 3762882, at *1 & n. 1, 2013 U.S. Dist. LEXIS 100741, at *1 & n. 1.

The district court granted the defendants' motions to dismiss in both cases. In July 2013, the court issued an order and opinion in the Deutsche Bank case concluding that Cortlandt had failed adequately to plead title to claims arising under the Sub Notes and that Cortlandt had therefore failed adequately to plead facts on which Article III standing could be based. *See Deutsche Bank Op.,* 2013 WL 3762882, at *3, 2013 U.S. Dist. LEXIS 100741, at *9–10. In August 2013, the court issued an order in the present action explaining that the action was dismissed without prejudice "[f]or the reasons set forth in [the Deutsche Bank Opinion]." Order, *Cortlandt St. Recovery Corp. v. Aliberti,* No. 12 Civ. 8685 JPO (S.D.N.Y. Aug. 2, 2013).[4]

Cortlandt appealed.

**DISCUSSION**

Cortlandt argues that the district court erred in granting the defendants' motion to dismiss its complaint for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1). Cortlandt further asserts that the district court erred in failing to grant to it the opportunity to cure any standing defect under Fed.R.Civ.P. 17(a)(3), which allows for "the real party in interest to ratify, join, or be substituted into" a pending action. We disagree with both contentions.

**I. Standard of Review**

▇ A district court properly dismisses an action under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction if the

---

3. "PIK" is an acronym for "payment-in-kind." *See In re TPG Troy, LLC,* 492 B.R. 150, 154 (Bankr.S.D.N.Y.2013).

4. Defendant Giancarlo Aliberti was voluntarily dismissed from the action.

court "lacks the statutory or constitutional power to adjudicate it," *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000), such as when (as in the case at bar) the plaintiff lacks constitutional standing to bring the action. *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,* 549 F.3d 100, 104, 106 (2d Cir.2008); *see also Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 n. 6 (2d Cir.2006) ("[T]he proper procedural route [for standing challenges at the pleadings stage] is a motion under Rule 12(b)(1)."). On appeal from a dismissal under Rule 12(b)(1), we review the court's factual findings for clear error and its legal conclusions *de novo. Makarova,* 201 F.3d at 113.

■ The plaintiff bears the burden of "alleg[ing] facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir.2011). In assessing the plaintiff's assertion of standing, "we accept as true all material allegations of the complaint[ ] and ... construe the complaint in favor of the complaining party." *W.R. Huff,* 549 F.3d at 106 (internal quotation marks omitted). In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint. *Makarova,* 201 F.3d at 113.

■ "[A] district court's decision whether to dismiss pursuant to Rule 17(a) is reviewed for abuse of discretion." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,* 407 F.3d 34, 43–44 (2d Cir.), *certified question accepted,* 5 N.Y.3d 730, 799 N.Y.S.2d 769, 832 N.E.2d 1185 (2005), *certified question withdrawn sub nom. Int'l B.V. (Found. of S'holders' Comm. Representing Former S'holders of Saybolt Int'l B.V.) v. Schreiber,* 421 F.3d 124 (2d Cir.2005).

## II. Standing

■ "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To have such Article III standing, "the plaintiff [must have] 'alleged such a personal stake in the outcome of the controversy' as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Id.* at 498–99, 95 S.Ct. 2197 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Others may benefit "collaterally" from a resolution favorable to the plaintiff, *id.* at 499, 95 S.Ct. 2197, or suffer from an unfavorable one, but the plaintiff's genuinely personal stake ensures the presence of "that concrete adverseness which sharpens the presentation of issues upon which [a] court so largely depends." *Baker,* 369 U.S. at 204, 82 S.Ct. 691.

■ A plaintiff claiming such a stake must establish, first, that it has sustained an "injury in fact" which is both "concrete and particularized" and "actual or imminent," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted); second, that the injury was in some sense caused by the opponent's action or omission, *id.;* and finally, that a favorable resolution of the case is "likely" to redress the injury, *id.* at 561, 112 S.Ct. 2130. These elements form an "irreducible constitutional minimum" without which a federal court may not proceed to the merits of a claim. *Id.* at 560, 112 S.Ct. 2130. "[T]he jurisdictional issue must be resolved before the merits issue...." *Alliance For Envtl. Renewal,* 436 F.3d at 85.

■ Cortlandt does not allege that it has suffered direct injury as a result of

the defendants' actions. It points instead to the well-established principle that "[l]awsuits by assignees ... are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008) (quoting *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 777–78, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000)). The defendants, for their part, do not dispute that an assignment of claims from the noteholders to Cortlandt would allow Cortlandt to "stand in the place of the injured party" and satisfy constitutional standing requirements. *W.R. Huff*, 549 F.3d at 107. Neither do they dispute that the noteholders *could* have assigned their claims to Cortlandt. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir.1997) ("In general, claims or choses in action may be freely transferred or assigned to others."). Instead, the parties dispute whether the noteholders actually *did* assign the claims such that Cortlandt has standing to bring suit on the Sub Notes.

To assign a claim effectively, the claim's owner "must manifest an intention to make the assignee the owner of the claim." *Id.* (internal quotation marks and brackets omitted). A would-be assignor need not use any particular language to validly assign its claim "so long as the language manifests [the assignor's] intention to transfer *at least title or ownership*, *i.e.*, to accomplish 'a completed transfer of the entire interest of the assignor in the particular subject of assignment.'" *Id.* (emphasis added) (citations omitted). An assignor's grant of, for example, "'the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings,'" *id.* at 18 (quoting agreements that were the subject of that appeal), may validly create a power of attorney, but that language would not val-idly assign a claim, because it does "not purport to transfer title or ownership" of one. *Id.*

Cortlandt has not carried its burden of showing a valid assignment of a claim. First, Cortlandt's complaint does not allege "a completed transfer" of the noteholders' "entire interest" in any claim arising under the Sub Notes. *Id.* at 17. The complaint alleges that Cortlandt was assigned "full rights under the assignments to collect principal and interest due and to pursue all remedies," Pl.'s First Am. Compl. ¶ 12 (J.A. 60), and that Cortlandt is "authorized to sue and collect on the Sub Notes" on behalf of the assignors, *id.* ¶ 108 (J.A. 82). It does not, however, indicate that Cortlandt was assigned *ownership* of the claims. Cortlandt argues that an "assignment of full rights to collect is sufficient" to satisfy the injury-in-fact requirement. Appellant's Br. at 11. But, as we have explained,

> [a] provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim. The grant of a power of attorney, however, is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name.

*Advanced Magnetics*, 106 F.3d at 17–18 (citations omitted); *cf.* 6A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1545 (3d ed. 2014) ("[T]he mere transfer of a general power of attorney ... does not create a sufficient interest or right in the chose and the grantor of the power remains the only real party in interest.").

Nor has Cortlandt pointed to anything in the assignment, or to other evidence in the record, suggesting that title to claims

arising under the Sub Notes was assigned to it.[5] The assignment reads:

> The Noteholder hereby assigns to Cortlandt Street Recovery Corp.... full rights to collect amounts of principal and interest due on the Notes, and to pursue all remedies with respect to the Notes against Hellas Finance [or various other related entities] ... and any other person or entity who may be liable to Noteholder. The Noteholder remains the owner of the Notes and person in whose name the Notes are registered.

> The Noteholder hereby irrevocably appoints [Cortlandt] its true and lawful attorney and proxy, with full power of substitution, to pursue collection and all remedies with respect to the Notes.... Under this appointment [Cortlandt] shall have all requisite power and authority ... to make any request or demand or to take any other action under or with respect to the Notes, or under the December 21, 2006 Indenture under which the Notes were issued.

J.A. 109–10. The language of the assignment confirms that Cortlandt was authorized to collect payment on behalf of the noteholders, but it does not so much as hint that title to the claims at issue was being transferred. An assignment such as the one in issue, which does not transfer ownership of claims, is, on its own, "insufficient to permit [a purported assignee] to sue on those claims in its name." *Advanced Magnetics*, 106 F.3d at 18.

Cortlandt urges us to reconsider the approach of *Advanced Magnetics* in light of *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008). We think *Advanced Magnetics* remains persuasive. In *Sprint*, payphone operators had assigned their right to collect specified

payments from telephone carriers to collection firms called "aggregators." *Id.* at 271–72, 128 S.Ct. 2531. Through a separate agreement, the aggregators agreed to remit any payments obtained from the carriers to the payphone operators, less a fee for the aggregators' services. *Id.* at 272, 128 S.Ct. 2531. The aggregators brought suit against the carriers. *Id.* The carriers moved to dismiss the complaint on the ground that the remittance agreement deprived the aggregators—mere "assignees for collection"—of any real interest in the claims and, therefore, of standing to pursue them, despite the valid assignment. *Id.*

The Court rejected the carriers' challenge, recognizing the longstanding "historical tradition of suits by assignees, including assignees for collection." *Id.* at 285, 128 S.Ct. 2531. Whatever the aggregators did with their payments post-lawsuit, the Court reasoned, was of no constitutional moment. After all, the aggregators' "injuries would be redressed whether the aggregators remit[ted] the litigation proceeds to the payphone operators, donate[d] them to charity, or use[d] them to build new corporate headquarters." *Id.* at 287, 128 S.Ct. 2531.

Cortlandt argues that "[n]othing in *Sprint* suggests that 'title' or 'ownership' must be recited" in an assignment to confer standing upon an assignee. Appellant's Reply Br. at 4. But *Sprint* did not focus on the aggregators' title to the claims because there was "no reason to believe the assignment [was] anything less than a complete transfer to the aggregator[s] of the injury and resulting claim." *Sprint*, 554 U.S. at 286, 128 S.Ct. 2531 (internal quotation marks omitted). The assignment at issue in *Sprint* "assign[ed],

---

**5.** As noted above: "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

transfer[red] and set[ ] over to [the aggregator] for purposes of collection, *all rights, title and interest* of the [payphone operators] in [the operators'] *claims, demands, or causes of action.*" *Id.* at 272, 128 S.Ct. 2531 (emphases added). The assignment here, by contrast, confers only "full rights to collect amounts of principal and interest due on the Notes, and to pursue all remedies with respect to the Notes," making no mention of title to, or ownership of, the claims. Whereas the payphone operators in *Sprint* "assigned their claims to the aggregators lock, stock, and barrel," *id.* at 286, 128 S.Ct. 2531, the noteholders in the case at bar assigned to *Cortlandt* only the ability to collect under the claims. Although *Sprint* confirms that an assignee need not possess *more* than title to a claim to bring suit upon that claim, nothing in that case suggests that an assignee may proceed with less.

■ If there was any doubt about the continuing relevance of *Advanced Magnetics* in light of *Sprint*, it was settled by *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir.2008). There we concluded that *Sprint* "implicitly supports the holding of *Advanced Magnetics* that a mere power-of-attorney ... does not confer standing to sue in the holder's own right." *Id.* at 108. It is still true that "the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Id.*

■ Cortlandt argues, finally on this score, that an assignment of rights to collect payments under the Notes and to pursue all remedies under the notes confers an interest "at least as broad as" that conferred by an assignment of title. Appellant's Br. at 12. The dispositive inquiry does not go to the breadth of the assignment, however, but rather to its nature. "There is an important distinction between simply hiring a lawyer and assigning a

claim to a lawyer.... The latter confers a property right (which creditors might attach); the former does not." *Sprint*, 554 U.S. at 289, 128 S.Ct. 2531. Our caselaw confirms that a purported assignee of a claim must plead a proprietary interest in that claim, and not simply the ability to pursue the claim on behalf of another, to bring the claim in his or her own name and satisfy the requirements of constitutional standing.

### III. Rule 17

■ Cortlandt further argues that even if it lacked constitutional standing, the district court erred by not providing Cortlandt with the opportunity to cure this deficiency under Fed.R.Civ.P. 17(a)(3). As noted above, "a district court's decision whether to dismiss pursuant to Rule 17(a) is reviewed for abuse of discretion." *Schreiber*, 407 F.3d at 43–44.

Rule 17(a)(1) requires that an action "be prosecuted in the name of the real party in interest." In Part II of our opinion, above, we concluded that the district court was correct in deciding that, absent an assignment of the claims in issue, this lawsuit was not brought or prosecuted in the name of the real party in interest. But Rule 17(a)(3) prohibits a court from dismissing an action for failure to comply with subsection (a)(1) "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."

■ The real party in interest principle embodied in Rule 17 ensures that only "a person who possesses the right to enforce [a] claim and who has a significant interest in the litigation" can bring the claim. *Schreiber*, 407 F.3d at 48 n. 7 (quoting *Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83 (4th Cir.1973)); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d

Cir.2003) ("[A]n action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." (internal quotation marks omitted)). The rule was initially adopted to ensure that assignees could bring suit in their own names, contrary to the common-law practice. *See* Fed.R.Civ.P. 17 advisory committee's notes, 1966 Amendment. However, "the modern function of the rule . . . is [ ] to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata." *Id.; see also Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102 (5th Cir.1989) ("The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles."). The dismissal provision in Rule 17(a)(3) was added later "to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." 6A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1555 (3d ed.2014). That provision codifies the modern "judicial tendency to be lenient when an honest mistake has been made in selecting the proper plaintiff." *Id.*

■■■ If a party successfully moves for ratification, joinder, or substitution, "the action proceeds as if it had been originally commenced by the real party in interest." Fed.R.Civ.P. 17(a)(3). Crucially for statute of limitations purposes, the claim of the real party in interest therefore dates back to the filing of the complaint. Cortlandt argues that although its lawsuit was dismissed for lack of subject matter jurisdiction, the dismissal was based solely on the fact that Cortlandt was not the real party in interest. It should therefore have been permitted either to amend the complaint to substitute the parties who actually held the claims at issue as plaintiffs in the lawsuit, or to amend its agreement with the real parties in interest to transfer title to the claims to Cortlandt, thereby making it the real party interest.

■■■ The defendants' first argument to the contrary is that Cortlandt forfeited any Rule 17(a)(3) objection by failing to raise the issue before the district court. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Bogle–Assegai v. Connecticut,* 470 F.3d 498, 504 (2d Cir.2006) (internal quotation marks omitted). Cortlandt asserts that it preserved the objection by requesting the opportunity to amend its complaint "if the [c]ourt conclude[d] there [were] any defects or deficiencies." Mem. in Opp'n to the Sponsor Defs.' Mot. to Dismiss at 25 n. 21, Dkt. No.68, *Cortlandt St. Recovery Corp. v. Aliberti,* No. 12 Civ. 8685 JPO (S.D.N.Y. Apr. 22, 2013); Mem. in Opp'n to the Mot. to Dismiss of [the Hellas Defs.] at 24 n. 22, Dkt. No.77, *Cortlandt St. Recovery Corp. v. Aliberti,* No. 12 Civ. 8685 JPO (S.D.N.Y. May 31, 2013).

■■■ Cortlandt did not explicitly refer to Rule 17 or specify a means by which it hoped to remedy any standing deficiency in the action as filed. But it did invoke Rule 17 in the context of the defendant's standing objection in the Deutsche Bank action, arguing that it should have been given the opportunity to substitute the noteholders as the real parties in interest or to obtain a new assignment. *Deutsche Bank Op.,* 2013 WL 3762882, at *3, 2013 U.S. Dist. LEXIS 100741, at *10–11. And the district court squarely addressed those arguments, denying the requests. *Id.,* 2013 WL 3762882, at *3 & n. 4, 2013 U.S. Dist. LEXIS 100741 at *1112 & 12 n. 4. Because the district court dismissed the present action "[f]or the reasons set forth" in the Deutsche Bank Opinion, Order,

*Cortlandt St. Recovery Corp. v. Aliberti,* No. 12 Civ. 8685 JPO (S.D.N.Y. Aug. 2, 2013), thus reaching and rejecting Cortlandt's implied 17(a)(3) objection, and because we may in any event exercise our discretion to consider an issue raised for the first time on appeal "where the argument presents a question of law and there is no need for additional fact-finding," *Bogle–Assegai,* 470 F.3d at 504 (internal quotation marks omitted), we decline to conclude that Cortlandt has forfeited its rights under Rule 17.

 The question then is whether the district court abused its discretion in denying an amendment request under Rule 17. We have had few occasions on which to address this issue. *See Schreiber,* 407 F.3d at 43 (noting that as of 2005 "this [C]ircuit appears never to have stated the proper standard of review for a district court's application of the curative procedures set forth in that rule"). In *Advanced Magnetics,* our Circuit's leading case interpreting the Rule, we concluded that the assignment agreements in issue "were insufficient to transfer to [the plaintiff] ownership of the claims of the [assignors] and hence were insufficient to permit [the plaintiff] to sue on *those* claims in its name." 106 F.3d at 18 (emphasis added).

We nonetheless returned the case to the district court directing "that leave to file the proposed amended complaint substituting the [assignors] as plaintiffs to pursue their own claims [be] granted under Rule 17(a)." *Id.* at 21. We reasoned that such substitution was warranted for three reasons: First, "[t]he complaint's only pertinent flaw was the identity of the party pursuing those claims." *Id.* at 20. In other words, the proposed amended complaint sought only to substitute one name for another; the factual and legal allega-

tions of the complaint would remain unaltered. Second, there was no indication of "bad faith or ... an effort to deceive or prejudice the defendants." *Id.* at 21. Finally, the proposed substitution did not threaten to prejudice the defendants, who had timely notice of the substance of the allegations, the relevant parties, and their claims. *Id.*

But the facts underlying our decision in *Advanced Magnetics* differ from those in the case at bar in at least one significant respect: There, unlike here, the named plaintiff had standing irrespective of any amendment under Rule 17 to pursue at least *some* of its claims against the defendants; Cortlandt did not. The district court here followed the lead of several other district courts in this Circuit by distinguishing *Advanced Magnetics* based on that difference.[6] *See, e.g., Clarex Ltd. v. Natixis Sec. Am. LLC,* No. 12 CIV. 0722 PAE, 2012 WL 4849146, at *8, 2012 U.S. Dist. LEXIS 147485, at *20–21 (S.D.N.Y. Oct. 12, 2012); *In re SLM Corp. Sec. Litig.,* 258 F.R.D. 112, 115 (S.D.N.Y.2009).

In Cortlandt's case, absent a complete assignment of the only claims on which the lawsuit was based, there was no valid lawsuit pending before the district court in which to permit an amended complaint. The district court reasoned that "[s]tanding ... 'is to be determined as of the commencement of suit.' *Lujan,* 504 U.S. at 570 n. 5, 112 S.Ct. 2130. A court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, 'if jurisdiction [was] lacking at the commencement of a suit....' *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.,* 675 F.3d 149, 160 (2d Cir.2012)." *Deutsche Bank Op.,* 2013 WL 3762882, at

---

**6.** *Advanced Magnetics* did not explicitly rely on the fact that the plaintiff had standing on some claims to reach the plaintiff's Rule 17 objection as to the other claims, nor did it examine the relationship between constitutional standing requirements and Rule 17.

*3, 2013 U.S. Dist. LEXIS 100741, at *11 (second ellipsis in original). The court also noted that "'where courts in this Circuit have used [ ] Rule 17(a)(3) to remedy defects in standing, they have generally done so where the plaintiff clearly had standing on another claim that it brought.'" *Id.*, 2013 U.S. Dist. LEXIS 100741, at *11–12 (quoting *Clarex Ltd.*, 2012 WL 4849146, at *8, 2012 U.S. Dist. LEXIS 147485, at *22) (brackets in original). In other words, in the absence of a plaintiff with standing, this lawsuit was a nullity, and there was therefore no lawsuit pending for the real party in interest to "ratify, join, or be substituted into" under Rule 17(a)(3) or otherwise.

The question whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency when it lacks standing as to *all* of its claims—as is the case here—appears to be an issue of first impression in this Court, if not the district courts in this Circuit. *See W.R. Huff*, 549 F.3d at 104 n. 3 (avoiding Rule 17(a) question where only issue on appeal was constitutional standing); *Lunney v. United States*, 319 F.3d 550, 556–57 (2d Cir.2003) (avoiding Rule 17(a) question by affirming dismissal on other jurisdictional grounds). At least one other circuit has addressed the question, *see Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir.2002) (plaintiff that "had no standing to bring th[e] action [had] no standing to make a motion to substitute the real party in interest"), although this decision has· met with some criticism, *see, e.g., Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F.Supp.2d 766, 773–74 & n. 3 (S.D.N.Y.2011) (declining to fol-

low *Zurich Insurance Co.* based on the district court's view that that case adopted an unnecessarily "rigid" approach); 13A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 3531 n. 61 (3d ed.2014) (characterizing *Zurich Insurance Co.* as "particularly troubling").

We need not, however, resolve this question to dispose of Cortlandt's request to attempt to cure the standing defect under Fed.R.Civ.P. 17(a)(3). We affirm because neither of the requests made by Cortlandt in its effort to cure the standing problem would have been consistent with Rule 17(a)(3). Therefore, the district court's decision to deny relief under that rule was not an abuse of discretion.

Cortlandt made two specific, alternative requests: first, to substitute the noteholders for it·as plaintiffs, or, second, for leave to obtain a new assignment from the noteholder vesting in Cortlandt sufficient title to maintain this lawsuit.[7] We conclude that neither provides the plaintiff with a means of employing the provisions of Rule 17(a)(3) to solve its standing problems.

As to Cortlandt's first request, substitution of the noteholders as plaintiffs would cure the standing defect. Simultaneously and necessarily, though, it would create a different, fatal jurisdictional defect. Cortlandt conceded at oral argument that the noteholders, foreign citizens, are not diverse from the defendants, also foreign entities. While

diversity is present when the action is between "citizens of a State and citizens or subjects of a foreign state," 28 U.S.C.

---

**7.** As the district court described it:

During a recent telephone conference, Cortlandt suggested that, were the [c]ourt to hold that Cortlandt lacked standing, it should be permitted to cure the deficiency by "interven[ing] the real party ... or establish[ing] authorization" through a new agreement. (Trans. at 5:16–18; *see also id.*

at 5:18–22 (Plaintiff's Counsel: "If [Defense Counsel] is questioning whether the authorization is sufficient, rather than to say that this is sufficient where he says it isn't, he is just giving me language that he wants to see, why don't I just go out and get it?"). *Deutsche Bank Op.*, 2013 WL 3762882, at *3, 2013 U.S. Dist. LEXIS 100741, at *10–11.

§ 1332(a)(2), or between "citizens of different States and in which citizens or subjects of a foreign state are additional parties," *id.* § 1332(a)(3)[,] diversity is lacking within the meaning of these sections where the only parties are foreign entities.

*Universal Licensing Corp. v. Paola del Lungo S.p.A.,* 293 F.3d 579, 580–81 (2d Cir.2002). It is undisputed that the only potential basis for federal subject matter jurisdiction in this case is diversity. We have explained that "[t]he procedural mechanisms set forth in Rule 17(a) for ameliorating real party in interest problems may not, under the Rules Enabling Act, 28 U.S.C. § 2072(b), be employed to expand substantive rights." *Schreiber,* 407 F.3d at 49. Thus, "Rule 17(a) ... does not extend or limit the subject matter jurisdiction of a federal court" by conferring subject matter jurisdiction when it would "not otherwise exist." *Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d 857, 861 n. 4 (2d Cir.1995) (internal quotation marks omitted); *see also Lunney,* 319 F.3d at 556–57. Because the noteholders Cortlandt sought to substitute would have lacked subject matter jurisdiction to bring the claims, the district court did not abuse its discretion by denying Cortlandt's request to substitute those entities under Rule 17(a)(3). *See* 4 Moore's Federal Practice 3D § 17.12[1][c] ("If joinder or substitution of, or ratification by, a real party in interest would destroy the court's jurisdiction, the action must be dismissed.").

■ If Cortlandt's second request—for leave to obtain a new assignment—were pursued, diversity jurisdiction would not appear to present a barrier. The diversity jurisdiction that now obtains between the plaintiff and the defendants would survive. But while granting Cortlandt's request to create and execute a new assignment transferring complete title and ownership of the claims in issue to Cortlandt might theoretically create a claim litigable by Cortlandt, it would not enable Cortlandt to alter its complaint in the district court pursuant to Rule 17(a)(3) to reflect the contents of the revised transfer.

As we have discussed, Cortlandt's First Amended Complaint alleges that it was assigned "full rights under the assignments to collect principal and interest due and to pursue all remedies." Pl.'s First Am. Compl. ¶ 12 (J.A. 60). In order to have standing, however, Cortlandt would have to allege that it was assigned title to the claims, not merely a power of attorney. A new assignment would "alter[ ] the original complaint's factual allegations as to the events or the participants," *Advanced Magnetics,* 106 F.3d at 20, because the language of the new complaint, to cure the standing bar, would necessarily reflect the contents of the new assignment.

We have ordinarily allowed amendments under Rule 17 only "when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action." *Park B. Smith, Inc.,* 811 F.Supp.2d at 773. Cortlandt's legal claims might remain unaltered if a new assignment were substituted for the old one, but the factual allegations supporting them would not. Unlike a substitution, such as the one requested in *Advanced Magnetics* or *Zurich Insurance Co.,* pleading the existence of a new and substantively different assignment would require more than a "merely formal" alteration of the complaint. *See Advanced Magnetics,* 106 F.3d at 20. Such an attempt to employ Rule 17(a)(3) to cure the standing problem here would thus be fated to fail.

We cannot rule out the possibility that Cortlandt might have avoided these challenging procedural pitfalls through a request for leave to obtain a valid assignment under some other rule of civil

procedure. It did not. It has relied upon only Rule 17 in the present appeal. For the reasons set forth above, its request falls outside the bounds of the proper application of that rule.[8]

## Conclusion

For the foregoing reasons, the district court did not err in concluding that the plaintiff lacked standing nor did the court abuse its discretion in denying the plaintiff relief under Rule 17(a)(3). It therefore did not err in dismissing the complaint without prejudice. The judgment of the district court is therefore AFFIRMED.

SACK, Circuit Judge, concurring:

Unsurprisingly, I concur in the foregoing opinion—I am, after all, its author. I add this brief concurrence, though, to explain my view that a decision referred to in that opinion, *Zurich Insurance Co. v. Logitrans, Inc.*, 297 F.3d 528 (6th Cir.2002), is not the law of this Circuit, and also to express some doubt that it should be. My colleagues point out that the resolution of this issue is not necessary to our resolution of this appeal, and decline, therefore, to express their views on the subject.

In *Zurich Insurance Co.*, the Sixth Circuit affirmed the denial of a motion that had been brought in an attempt to cure a standing defect under Fed.R.Civ. P.17(a)(3). An insurance company subsidiary, Zurich Switzerland, initially thinking itself to be the subrogee of certain claims, requested leave of the district court to substitute the proper subrogee of all of those claims, a parallel subsidiary * referred to as American Guarantee. *Zurich Ins. Co.*, 297 F.3d at 530. The district court denied the motion, *see id.* at 530–31, and the court of appeals affirmed, *id.* The court of appeals concluded that because the plaintiff "had no standing to bring th[e] action, [it had] no standing to make a motion to substitute the real party in interest." *Id.* at 531. The court explained:

> An attorney made a mistake and filed the action in the name of Zurich Switzerland, when Zurich Switzerland had no claims whatsoever against the defendants, and no Article III standing to sue. American Guarantee, a totally separate entity, which was not vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's mistake.

**8.** We have apparently never, in a precedential opinion, adopted a rule to the effect "that even when [a] claim is not assigned until after [an] action has been instituted, the assignee is the real party in interest and can maintain the action." 6A Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1545 (3d ed.2014); *see, e.g., Dubuque Stone Prod. Co. v. Fred L. Gray Co.*, 356 F.2d 718, 724 (8th Cir.1966); *Kilbourn v. W. Sur. Co.*, 187 F.2d 567, 571 (10th Cir.1951); *see also* 4 Moore's Federal Practice § 17.11[1][e]. *But see Lambrinos v. Exxon Mobil Corp.*, 349 Fed.Appx. 613, 614 (2d Cir.2009) (summary order) (apparently relying on this rule). The "rule" apparently predates adoption of Rule 17(a)(3), but modern courts sometimes support their approval of such post-commencement assignment by reference to Rule 17(a). *See, e.g., Campus Sweater & Sportswear Co. v. M.B. Kahn Constr. Co.*, 515 F.Supp. 64, 84 (D.S.C.1979),

*aff'd*, 644 F.2d 877 (4th Cir.1981). We need not determine under what circumstances, if ever, a post-commencement assignment might be appropriate under 17(a)(3) or some other provision of the Federal Rules, although we note that *Advanced Magnetics* suggests that 17(a)(3) alone would not authorize such an assignment under these circumstances. Cortlandt has not made this argument in the district court or before us. *See McCarthy v. S.E.C.*, 406 F.3d 179, 186 (2d Cir.2005) ("We think it reasonable to hold appellate counsel to a standard that obliges a lawyer to include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived.").

* A separate opinion explained that Zurich Switzerland and American Guarantee were "sister companies under the common ownership of a single corporate entity." *Zurich Insurance Co.*, 297 F.3d at 533 (Gilman, J., concurring).

*Id.* at 532. The court cited other cases— *Ensley v. Cody Resources, Inc.,* 171 F.3d 315, 320 (5th Cir.1999), and *Whelan v. Abell,* 953 F.2d 663, 672 (D.C.Cir.1992)—in which courts first determined that a plaintiff had standing independent of any requested substitution before addressing the Rule 17 inquiry, *Zurich Ins. Co.,* 297 F.3d at 532. Those cases did not address whether that order of operations was constitutionally required.

As our opinion notes, some courts and commentators have criticized *Zurich Insurance Co. See ante* at 423. I think this criticism has some merit. It was undisputed in *Zurich Insurance Co.* that an entity, waiting in the wings and willing to become a party to the action, had a claim that could be "appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks omitted). The *Zurich Insurance Co.* court declined to permit the substitution, even though the kinds of concerns typically raised by a standing challenge, such as the risk that "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large," *id.* at 573–74, 112 S.Ct. 2130—would inadequately present or defend his claim, would have been absent had the substitution been allowed. The only bar to the court's jurisdiction was a complaint heading containing the wrong client's name.

To be sure, the Supreme Court has frequently said that a federal court's constitutional authority to hear the merits of a case must be established at the outset of the litigation. *See, e.g., Mollan v. Torrance,* 9 Wheat. 537, 22 U.S. 537, 539, 6 L.Ed. 154 (1824) ("[J]urisdiction ... depends upon the state of things at the time

of the action brought."). This is said to be so both with respect to standing, *see, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (standing "must exist at the commencement of the litigation"), and with respect to other aspects of subject matter jurisdiction, *see, e.g., Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 570–71, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) ("Th[e] time-of-filing rule ... measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing.").

But the jurisdiction-at-commencement rule is not absolute. "In cases where the plaintiff lacked initial standing or the case suffered from some other jurisdictional defect at the time suit is commenced, the Supreme Court's cases are less than clear as to whether and how a jurisdictional defect can be remedied in the course of litigation." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,* 402 F.3d 1198, 1203 (Fed.Cir.2005). In some cases, a jurisdictional defect existing at the outset of litigation *can* be cured by subsequent events. In the case of diversity jurisdiction, for example, the dropping-out of a nondiverse plaintiff whose presence would otherwise defeat diversity confers diversity jurisdiction upon a federal court, provided other jurisdictional requirements are satisfied. *See, e.g.; Grupo Dataflux,* 541 U.S. at 572, 124 S.Ct. 1920 ("[D]ismissal of [a] party that had destroyed diversity ... [as a] method of curing a jurisdictional defect ha[s] long been an exception to the time-of-filing rule."). And several courts have held that a loss of standing *after* commencement of a litigation but prior to trial may be cured by reacquisition of standing or by joinder of a party with standing. *See, e.g., Schreiber Foods,* 402 F.3d at 1204 (collecting cases); *Corbin v. Blankenburg,*

39 F.3d 650, 654 (6th Cir.1994) (en banc); *but see id.* at 655 (Celebrezze, J., dissenting).

Moreover, in the case of a substitution request such as in *Zurich Insurance Co.,* allowing substitution may be " 'the wiser answer to the problem of expediting trials and avoiding unnecessary delay and expense of requiring an action to be started anew where a substitution is desired though the subject matter of the actions remains identical.' " *Park B. Smith, Inc. v. CHF Indus. Inc.,* 811 F.Supp.2d 766, 774 (S.D.N.Y.2011) (quoting *Nat'l Mar. Union of Am. v. Curran,* 87 F.Supp. 423, 426 (S.D.N.Y.1949)). The cases cited by the Advisory Committee in the note explaining the adoption of Rule 17(a)(3), *Levinson v. Deupree,* 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed.2d 1319 (1953), and *Link Aviation, Inc. v. Downs,* 325 F.2d 613 (D.C.Cir. 1963), take a similarly pragmatic approach. In the latter case, for example, parties who had subrogated their interests in a given claim mistakenly brought suit in their own names, rather than in the names of the subrogees. *Link Aviation,* 325 F.2d at 613–14. The court reasoned that this error, while significant, did not render the suit "a nullity." *Id.* at 615. It concluded that substitution of the subrogees was merited. *Id.* The court explained:

> Any other rule would be highly technical without meaningful purpose. The complaint alleged injury at the hands of the defendants. The suit was to recover therefor. That the recovery, if made, would inure not to the benefit of the nominal plaintiffs, but to that of the [subrogees] ... did not deprive the suit of a status which enabled the [subrogees] to substitute themselves as plaintiffs and continue the suit in their own names.

*Id.*

Of course, jurisdictional requirements imposed by the Constitution cannot be cast aside because they are onerous or require expense, or because the results of their application appear unfair or unduly technical. But here the concerns animating a constitutional principle are absent, so it seems to me that practical considerations may ultimately prevail.

Concededly, the plaintiff's request in the case at bar to obtain a post-commencement assignment may implicate different concerns than the type of substitution request at issue in *Zurich Insurance Co.* The latter entails a change in name only, while the former seems to involve a change in the *status quo ante,* in that Cortlandt would have to obtain title to claims to which it currently lacks title. Even so, having considered this issue in the course of reaching a result on other legal grounds, I have come to doubt that our Court should, when directly confronted by the issue, adopt the categorical approach taken the by the Sixth Circuit.