## Cortlandt St. Recovery Corp. v Hellas Telecommunications II, S.C.A.

2023 NY Slip Op 34553(U)

December 28, 2023

Supreme Court, New York County

Docket Number: Index No. 653181/2011

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    HON. MELISSA A. CRANE

_Justice_

|  |  |
|---|---|
| PART | 60M |

------------------------------------------------------------------X

CORTLANDT STREET RECOVERY CORPORATION,

Plaintiff,

- v -

HELLAS TELECOMMUNICATIONS II, S.C.A., HELLAS TELECOMMUNICATIONS I, S. R.L., HELLAS TELECOMMUNICATIONS, S. R.L., APAX PARTNERS, LLP, TPG CAPITAL, L.P., DAVID BONDERMAN, JAMES COULTER, MARTIN HALUSA, JOHN MEGRUE, GIANCARLO ALIBERTI, MATTHIAS CALICE, TPG CAPITAL-N.Y., LLP, APAX PARTNERS, L.P. D/B/A APAX PARTNERS OF NEW YORK, TPG PARTNERS IV, L.P., TPG ADVISORS IV., INC.,TPG GENPAR IV, L.P., TPG ADVISORS II, INC.,T3 GENPAR II, L.P., T3 PARTNERS II, L.P., T3 PARALLEL II, L.P., APAX PARTNERS EUROPE MANAGERS LIMITED, APAX EUROPE VI GP CO. LIMITED, APAX EUROPE VI GP., L.P., APAX EUROPE VI-A, L.P., APAX EUROPE VI-I, L.P., TROY, L.P. INC.,APAX WW NOMINEES LTD., TPG TROY, LLC,T3 TROY, LLC,HELLAS TELECOMMUNICATIONS CO-INVEST LTD., HELLAS TELECOMMUNICATIONS EMPLOYEES LTD., TCW HT-CO-INVEST I L.P., TCW HT CO-INVEST II L.P., MARGARET ELIZABETH MILLS, ALAN MICHAEL HUDSON, ERNST & YOUNG, LLP, ADMINISTRATORS OF HELLAS TELECOMMUNICATIONS II, S.C.A., BANK OF NEW YORK MELLON, COMMON DEPOSITORY FOR THE GLOBAL SUBORDINATED NOTES OF HELLAS TELECOMMUNICATIONS, II, S.C.A.,

Defendant.

| | |
|---|---|
| INDEX NO. | 653181/2011 |
| MOTION DATE | 08/14/2023 |
| MOTION SEQ. NO. | 009 |

**DECISION + ORDER ON MOTION**

------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 009) 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361

were read on this motion to/for              MISCELLANEOUS                .

Upon the foregoing documents, it is

By this motion, plaintiff moves for entry of a consent judgment that the only remaining

defendant Hellas Telecommunications (Luxembourg) II, S.C.A. (Hellas II) has agreed to after

653181/2011  CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS
Motion No. 009

Page 1 of 9

[*1]

negotiations. This is the second such motion. The court denied the first attempt to gain a court signature on a consent judgment back on November 7, 2022 [EDOC 38].

A bit of background is important for a clear understanding of this decision. Hellas II defaulted on bonds underlying this litigation (the "Sub Notes"). Hellas II submitted itself to an insolvency proceeding in the UK High Court of Justice on November 26, 2009. In 2010, plaintiff Cortlandt became the assignee of many of those Sub Notes. (See Kellogg Ex. C (Second Witness Statement of Laurence Sudwarts) at ¶ 4 (explaining, in a submission in the UK insolvency proceedings, that Cortlandt was created as a "collection entity" in late 2010 to facilitate claims on behalf creditors [EDOC 352] . On November 15, 2011, Cortlandt filed this lawsuit against Hellas II and others for defaulting on the Sub Notes. On March 14, 2012, Hellas II filed for liquidation in the United Kingdom and consequently this suit became stayed as against defendant Hellas II only. That stay was only lifted on September 27, 2022, ten years later.

Meanwhile, on September 22, 2014, Justice Friedman granted all the other defendants' motions to dismiss because Cortlandt lacked standing. Justice Friedman reasoned that an assignment conveying only a right "to collect" was insufficient to confer standing:

> "The court holds that the assignments to Cortlandt for both the PIK and
> Sub Notes were assignments of a right of collection, not of title to the claims,
> and are accordingly insufficient as a matter of law to confer standing upon
> Cortlandt"

(47 Misc 3d 545, 555 [New York County 2014]). However, the court did hold that this lack of standing was curable and therefore dismissed without prejudice. The Appellate Division, First Department affirmed on this issue (142 AD3d 833, 834-35 [1st Dep't 2016] ).

After the Appellate Division, First Department affirmed Justice Friedman's dismissal of the original complaint in this case, but before Hellas II's bankruptcy stay was lifted, Cortlandt

**653181/2011   CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS**
**Motion No. 009**

**Page 2 of 9**

[*2]

commenced yet another action[1]: *Cortlandt Street Recovery Corp., v TPG Capital Mgmt, L.P. et al*, Index No., 651176/2017 (*Cortlandt II*). *Cortlandt II* is quite similar to this case, except that Hellas II is not a defendant.

In *Cortlandt II*, on October 22, 2020, Justice Edmead, as Justice Friedman had before her, found that Cortlandt lacked standing to bring its claims. However, as Justice Friedman had done in this case, Justice Edmead granted Cortlandt leave to amend the complaint in *Cortlandt II* once it had corrected the standing issue.

On April 5, 2021, Cortlandt filed an amended complaint in *Cortlandt II*. Following motions to dismiss, in October 2022, Justice Reed ruled that Cortlandt had standing to proceed on some notes but not others. Specifically, Justice Reed ruled that Cortlandt had standing with respect to the 'Euroclear' notes but not with respect to the 'Clearstream' notes. This decision is currently on appeal, but still a year later has not been perfected.

Meanwhile, in this action, also in October 2022, Cortlandt moved for this court to approve a prior consent judgment similar to the one at issue on this motion, The court denied this motion without prejudice for two primary reasons. First, Cortlandt had not done anything to cure its standing problem that Justice Freedman had identified 8 years prior when she dismissed the action against all defendants (except Hellas II against whom the action at the time was stayed). Second, it was an end run around Judge Reed's decision that Cortlandt lacked standing to sue on the Clearstream notes. Cortlandt claims it now has standing on <u>all</u> the notes underlying

---

[1] Cortlandt commenced cases in New York County under index nos. 653357/2011, 653363/2011, 653181/2011, as well as various federal suits. In one of the federal cases, the Second Circuit held Cortlandt did not have standing to bring suit on the notes (see *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411 [2d Cir. 2015])

**653181/2011  CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS**
**Motion No. 009**

**Page 3 of 9**

3 of 9

the consent judgment as they are all "currently custodied" at Euroclear and Justice Reed has ruled that Cortlandt has standing to pursue the Euroclear notes.

Therefore, on April 28, 2023, Cortlandt filed an amended complaint in this case [EDOC 340]. The caption of the amended complaint lists all the former defendants. However, because the relief requested portion of the amended complaint only seeks relief against Hellas II, and the motion papers refer to certain defendants other than Hellas II as "non-parties" or "would be intervenors," the court assumes that Hellas II is the only defendant plaintiff intended to sue in this amended complaint

Plaintiff and defendant Hellas II have negotiated a resolution to the disputes alleged in the Amended Complaint (Dkt. 340). That settlement involves the entry of a consent judgment the form of which both sides have agreed as follows: (1) on plaintiff's breach of contract claim approximately €121,836,000 with interest to be calculated at the three-month EURIBOR plus 6%, reset two days before the beginning of each quarterly interest period (being the interest rate of the euro-denominated Sub Notes as referred to in the Offering Memorandum) and the three month LIBOR plus 5.75%, reset two days before the beginning of each quarterly interest period (being the interest rate of the dollar-denominated Sub Notes as referred to in the Offering Memorandum), from October 15, 2009. Additional interest is to be calculated on the overdue principal at the rate of 1% per annum in excess of the then applicable interest rate of the Sub Notes (as referred to in clause 4.01 of the Sub Note Indenture) from 30 days after the default in the payment of interest (which is defined as an Event of Default in clause 6.01(a) of the Sub Note Indenture) and (2) on its claim for fraud for fraud allegedly perpetrated on the Original Purchasers, at least €121,836,000, with interest to be calculated at the statutory rate of 9% from December 21, 2006, plus attorney's fees and costs.

**653181/2011   CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS**                    **Page 4 of 9**
Motion No.  009

4 of 9

Rather than simply settle, Plaintiffs and the Joint Liquidators agreed to the proposed consent judgment (EDOC 344), that they want the court to sign, presumably for Plaintiffs to then proceed against nonparties elsewhere, such as under an alter ego theory in *Cortlandt II.*

Some of these nonparties have vigorously objected to this consent judgment. Nonparty and objector Apax Partners US, LLC is an investment advisory firm organized under the laws of Delaware, with its office in New York City. Nonparty and objector TPG Capital-New York, Inc. is a corporation organized under the laws of Delaware with an office in New York City. Apax and TPG and their affiliates have been involved in the Hellas II transactions. None of these entities have moved to re-enter this action. Although this court need not entertain arguments from nonparties who have not even tried to intervene, in an abundance of caution, the court will address their arguments.

1. The Nonparties' "Collusion" Assertion

The Nonparties do not dispute that Hellas II defaulted on the Sub Notes in or around November 2009, and the notes remain in default. However, they allude to collusion between plaintiffs and the Joint Liquidators. In particular, the nonparties claim the proposed consent judgment is collusive "on its face because it is the result of cooperation between Cortlandt and Hellas II's liquidators for the purpose of allowing Cortlandt to seek judgment against" them (Opp Br. EDOC 348 at pg 17). They claim that the liquidators are engaging in collusion because they have admitted to fraud on Hellas II's behalf and have consented to a massive judgment against Hellas II. However, the nonparties point to no real evidence of collusion.

The concern that two nominally adverse parties would conspire to produce a judgment to use against third parties is simply not present here. This is a real debt that would be owed one way or the other. The Joint Liquidators in England are akin to a bankruptcy trustee in this

country. The court in England appointed them. Each side had separate counsel. The nonparties have pointed to nothing to indicate that the Joint Liquidators are not independent.

There is a reason there is no proof of collusion. The Joint Liquidators have a fiduciary obligation to act on behalf of all the creditors. Counsel for the Joint Liquidators was wise not to throw money away on lawyers when it was apparent that Hellas II owed on the Sub Notes. And, there is nothing wrong with the Joint Liquidators cooperating in the consent judgment so that Cortlandt can use it to go after other nonparty wrongdoers. Moreover, Hellas II also benefits because the consent judgment places a ceiling on its own liability in this action.

Finally, the consent judgment is not collusive because the parties have agreed it will not have res judicata effect: "The following Recitals reflect the agreement of the parties and the bases for their consent to judgment; the Recitals do not constitute independent findings of fact or conclusions of law made by the Court" [EDOC 344 at 1].

Thus, collusion is not a concern. The consent judgment is merely a way to resolve this case against the only remaining defendant without more litigation.

However, what is concerning is the **amount** of the consent judgment under the unique procedural circumstances present here. Unlike the motion in the related case of *Fortellus Funds Investment Trust v Hellas II*, 2023 WL 5531747 (New York County 2023), there is nothing on this motion to indicate the amount to which the Joint Liquidators agreed represents even a reasonable approximation of the amount Hellas II truly owes to Cortlandt. This is because in *Cortlandt II*, Justice Reed has ruled that Cortlandt does not have standing with respect to the Clearstream notes. While this holding may or may not be subject to change depending on where those notes are "currently custodied," that is up to Justice Reed who has not yet ruled on this issue (see EDOC 327 under Index No. 651176/2017 ["to the extent that any of the sub notes have

**653181/2011  CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS**
Motion No. 009

Page 6 of 9

6 of 9

been custodied at both clearing houses, that issue may be addressed in the upcoming stages of this litigation."]). Thus, while it is perfectly reasonable not to continue litigation in order to preserve resources for creditors, especially when the identical issues are before another judge in another case, the court cannot, at this juncture, determine with certainty whether the amount the consent judgment lists is correct, because what is owed depends on the outcome in *Cortlandt II*.

Accordingly, rather than proceed with this very old case that no party has any desire to continue, the court will render the amount of the consent judgment, €121,836,000 subject to subsequent court order in *Cortlandt II*. This way, the consent order is not an end run around the decision in *Cortlandt II* holding that Cortlandt does not have standing to pursue the Clearstream notes. Also, this way any amount against the nonparties will be fully tested in *Cortlandt II*, thereby allaying any concern about collusion. The nonparties are still free to maintain whatever defenses they have in that case.

2. Standing

As discussed above, standing was a bar to this lawsuit by virtue of decisions from Justice Friedman in this case is 2014 and Justice Edmead to 2020 in *Cortlandt II*. However, now there is a holding in *Cortlandt II* that Cortlandt does have standing with respect to the same Euroclear notes that Cortlandt has sued on in this case. This takes care of the standing problem in this case, at least in part.

3. Champerty

The non-parties claim the assignment to Cortlandt is champertous and therefore void, because the primary purpose of the assignment was to allow Cortlandt to sue on the notes. The champerty doctrine is codified in Judiciary Law § 489(1), that states in relevant part:

> No person or co-partnership, engaged directly or indirectly in the business of collection and adjustment of claims, and no corporation or association, directly or indirectly, itself

**653181/2011 CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS**
Motion No. 009

**Page 7 of 9**

[*7]

7 of 9

or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon...

Thus, champerty is a limited doctrine. It "does not apply when the purpose of an assignment is the collection of a legitimate claim" (*Certificate Holders of Merrill Lynch Mortgage Investors inc. v Love Funding Corp.*, 13 N.Y.2d 190, 201 [2009]). It merely prohibits the purchase of securities or claims with the primary purpose of bringing a lawsuit (*Bluebird Partners v First Fid. Bank*, 94 NY2d 726, 735-736 [2000]).

Here, there is evidence in the record that Cortlandt obtained an assignment after Hellas II defaulted on the notes as a "recovery corporation for the express purpose of enforcing the bonds." Cortlandt's acquisition of these "debt instrument[s]" for the purpose of "enforcing [them]" after the default by Hellas II is not champerty. See *Love Funding*, 591 F.3d at 121-22; *BF Holdings I, Inc. v. S. Oak Holding, Inc.*, 251 A.D.2d 1 [1st Dep't 1998][champerty not applicable where the mortgage loan had already fallen into default and been accelerated before its assignment to plaintiff]).

Plaintiff argues the original noteholders made the assignments not to litigate, but instead to assert creditors' claims in the UK insolvency proceedings. Plaintiff points to the Sudwarts Witness Statement which states that because of the "uncertain implications of a dissolution of Hellas II on the rights of Hellas II creditors" to register their claims before the "expiry of the statute of limitations," the Hellas II creditors concluded that they should file their proof of claims "as soon as possible" in the UK insolvency proceedings. (Kellogg Ex. C at ¶ 10.) Cortlandt was therefore created and utilized to facilitate that process, including by the bondholders assigning their rights to the newly formed company.

[*8]

Certainly, filing claims in bankruptcy on behalf of creditors is not "litigation." Here, more than likely we simply have investors attempting to recover notes purchased after a default, with an apparent plan to seek that recovery from other possibly responsible parties later.

Although the underlying noteholders remain anonymous, Hellas II is not crying champerty. Moreover, the nonparties have not even tried to intervene in this case. Considering the very same notes are before another court in *Cortlandt II*, this court sees no reason to prolong this case any further. Should the nonparties here who are actual defendants in *Cortladnt II* truly believe the assignments were made with a champertous purpose, they can raise their concern in that lawsuit.

The court finds the remaining contentions of the parties to be unavailing.

Accordingly, it is

ORDERED THAT the court grants the motion for an order entering the consent judgment with the limitations described in this decision.

| | | |
|---|---|---|
| 12/27/2023 | | MELISSA A. CRANE, J.S.C. |
| DATE | | |

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | X | GRANTED | | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

653181/2011   CORTLANDT STREET RECOVERY vs. HELLAS TELECOMMUNICATIONS          Page 9 of 9
Motion No.  009

9 of 9

[*9]